UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | Criminal No. 3:12CR033 |
| v. | ) | |
| | ) | |
| PHILIP SEBOLT, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## GOVERNMENT'S NOTICE AND MEMORANDUM REGARDING RULE 404(B) EVIDENCE

NOW COMES the United States of America, by Neil H. MacBride, United States Attorney, and Elizabeth C. Wu and Thomas K. Johnstone, IV, Assistant United States Attorneys for the Eastern District of Virginia, and, pursuant to Rules 404(b) and 104 of the Federal Rules of Evidence, provides the following notice of the general nature of evidence of other crimes, wrongs, or acts that the Government intends to introduce at trial during its case-in-chief.

### I. *Introduction*

This advertising of child pornography case involves the defendant Philip Michael Sebolt, who was an inmate at Federal Correctional Institution Petersburg ("FCI Petersburg"), serving a 360-month sentence after having been convicted in 2003 of advertising, transporting, and possessing child pornography in the United States District Court for the Northern District of Illinois.  The indictment charges one count of Advertising Child Pornography, after having previously been convicted of two or more offenses under federal law or the laws of any State relating to the sexual exploitation of children, in violation of 18 U.S.C. § 2251 (d)-(e).

Inmate Randall Bland met Sebolt at FCI Petersburg while Bland was serving a sentence for a supervised release violation in 2010.  In or about January 2010, Sebolt asked Bland–who was to be released in February 2010–if he would mail a box of letters for Sebolt upon Bland's release. Bland agreed and on or about February 17, 2010, Sebolt gave Bland a sealed box that he instructed Bland to mail once Bland was outside of the facility.  This box, along with Bland's personal items, were searched by prison officials at Bland's scheduled release the next day.  At that time, it was discovered that the box contained numerous outgoing envelopes addressed to various individuals in Ethiopia, Sri Lanka, Japan, India, and the Philippines.  Within the envelopes was a photocopied, handwritten advertisement seeking images of child pornography from the "destitute or [those] in need of fast easy money from the USA" and contained a pay scale based upon the number and nature of sexual activity depicted in the photo.  The reverse side of the advertisement depicted a full-page display of images of child pornography and child erotica and sketched images of genitalia.  The return address on both the advertisement and the outgoing envelopes was "Phil c/o Russell Cain, Rt. 4, Box 462, Salem WV 26426, USA."[1]

Also included in the box were a number of envelopes addressed to various prison book programs containing a form request for books and magazines, bearing Sebolt's register number and signed by "Phililp Sebolt."  In his request, Sebolt asked for books containing information about child care, child development, babysitting, *etc.*, that Sebolt indicated "must" contain photographs.  He also asked for books with "artistic nudity" of children, as well as pictures of nomadic and indigenous life that "must" contain photos of children.  With each category of books Sebolt requested, his final criterion was "Nudity is preferred."

---

[1]Russell Cain is Bland's birth name and the mailing address is that of Bland's aunt.

2

## II.  *Summary of Potential 404(b) Evidence to be Introduced*

The Government intends to offer the following evidence which potentially may be construed as 404(b) evidence.  The Government does not concede that this evidence is necessarily 404(b) evidence and files this Notice out of an abundance of caution.

    A.   Outgoing card to Sri Lanka

In December 2008, officials at FCI Petersburg intercepted an outgoing Christmas card from Sebolt to "Buddhika Jinadari," an individual in Sri Lanka.  The card contained a self-described "secret compartment" in which Sebolt enclosed a handwritten note referring to his "photo collecting hobby"and in which he provided the card's recipient with instructions for hiding future correspondence and photos in hidden compartments in greeting cards.  In his note, Sebolt emphasized that all photos needed to be hidden in these compartments to escape detection, with the need for his "great secrecy" becoming clear once he identified the types of photos he was seeking from the addressee. *See* copy of Outgoing card from Sebolt to Sri Lanka, attached as Exhibit 1.

    B.   Incoming card from Ethiopia

Also in December 2008, FCI Petersburg officials confiscated an incoming Christmas card to Sebolt containing a photo of a naked female toddler lasciviously exhibiting her genitals.  The mailing was sent to Sebolt from "Roda Tekeste," a"penpal" in Ethiopia who, based upon her accompanying correspondence to Sebolt, appears to have sent the pornographic image in

3

response Sebolt's request to assist him with his "hobby." [2]  *See* copy of Incoming card from

Ethiopia to Sebolt, attached as Exhibit 2 (redacted).

C.    Letters written at FCI McCreary

While Sebolt was incarcerated at Federal Correctional Institute, McCreary, Kentucky,

from in or about July 21, 2006 until in or about April 2008, he was disciplined for seeking

information about specific books containing nude pictures of children from book publishers.

Approximately one week after his arrival at McCreary in July 2006, Sebolt's outgoing mail was

monitored at it was discovered that he had written the entities, "Dover Pubns, Inc." and "Ciela,

LLC," seeking the description, cost, and ordering information for the books "Children: A

Pictorial Archive of Permission-Free Illustrations" and "Children are Children: Photographs from

Nine Countries," respectively. In each request, Sebolt specifically inquired as to whether photos

and illustrations were contained within the book.  *See* copy of letter from Sebolt to Dover Pubns,

attached as Exhibit 3; and copy of letter from Sebolt to Ciela, LLC, attached as Exhibit 4.

In March 2007, a letter Sebolt had addressed to "Candy Brown, Attorney at Law" was

returned to FCI McCreary due to insufficient postage. Upon inspection of its contents, prison

officials discovered a greeting card that had been tampered-with, along with a letter written by

Sebolt in which he offered money for "photos of barely legal teen (sic)" as well as cut-out

photographs of "the best, sexiest, hottest yongest (sic) girls you can find." In his letter, Sebolt

also outlined detailed instructions– including a hand drawing illustrating the proper technique–

_____

[2] The sender writes, "Phil really I don't know what sense to give the people children
nacked [sic] photos.  In my way, I don't care for the nacked [sic] children photos also I'm not
agree by these hobby [sic].  I love so much childrens [sic] more than anything in the world but I
don't like nacked [sic] photos it's pornography I think...").

4

for fashioning a compartment from a greeting card within which photos could be hidden and sent

to him in order to escape detection.  Sebolt cautioned the letter's recipient: "DO NOT mention

my requests in any correspondence. My letters are opened, read, & inspected.  We don't want to

give theses cops any reason to suspect.  We need to stay under the radar b/c nudity is banned in

prison. Contraband!" *See* copy of letter from Sebolt to Candy Brown, attached as Exhibit 5.

### III. *Argument*

In general, Rule 404(b) of the Federal Rules of Evidence provides that evidence of other

crimes, wrongs or acts is inadmissible to prove a defendant's character, but may be admissible

for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge,

identity, or absence of mistake or accident.  The Rule's list of purposes for which prior bad acts

may be admitted under Rule 404(b) is illustrative rather than exclusionary. *United States v.*

*Percy*, 765 F.2d 1199, 1203 (4th Cir. 1985).  Consequently, the Rule is characterized as an

inclusive one, admitting all evidence of other crimes or acts except that which tends to prove

only criminal disposition. *Id.*

The Fourth Circuit has developed a four-pronged test to protect against the dangers Rule

404(b) is intended to address. *See United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997).

Evidence of prior bad acts becomes admissible under Rule 404(b) and Rule 403 if it meets the

following criteria: (1) the evidence must be relevant to an issue, such as an element of an offense,

and must not be offered to establish the general character of the defendant; (2) the act must be

necessary in the sense that it is probative of an essential claim or an element of the offense; (3)

the evidence must be reliable; and (4) as required by Federal Rule of Evidence 403, the

evidence's probative value must not be substantially outweighed by confusion or unfair prejudice

5

in the sense that it tends to subordinate reason to emotion in the fact-finding process. *Id.* at 997.

The threshold for relevancy is not high.  Relevancy requires only that the evidence be "worth consideration by the jury" or have a "plus value" to be admissible.  *Queen*, 132 F.3d at 998.  In addition, "the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes."  *Id.* at 997.

Here, it is clear that the evidence of the outgoing card to Sri Lanka and the incoming card from Ethopia is intrinsic to and inextricably intertwined with the charged offense, such that admission of the evidence is necessary to provide context and to complete the story of the defendant's crime.  A Government witness from FCI Petersburg will testify that the discovery of Sebolt's attempt in December 2008 to send the card containing a "secret compartment" to Sri Lanka essentially initiated further investigation into Sebolt's attempts to circumvent mail safeguards within the institution, ultimately culminating in the discovery of Sebolt's efforts to obtain child pornography via the advertisements he created.  Significantly, envelopes to both "Buddhika Jinadari" and "Roda Tekeste" were found in February 2010 in Bland's box among the many items Sebolt had given Bland to mail: the one to Jinadari containing the above-described printed advertisement seeking to buy child pornography and the one to Tekeste containing a letter from Sebolt in which he unequivocally states that "[y]ou also know that it is my hobby and passion to photograph and collect photos of children in the complete nude and close-up photos of children's genitals[,]" and in which Sebolt proceeds to graphically request photographs of a child's genitals with specific instructions that Tekeste "fondle his penis until fully erect...[a]lso photograph him peeing/pooping, undressing, bathing and of you fondling, kissing, licking and sucking on his fully erect penis."

Assuming, *arguendo*, that these specific instances of correspondence between Sebolt and these two individuals are not intrinsic to the charged crime, they are independently admissible under Rule 404(b) as proof of his knowledge and intent.  Each of these two documents show that Sebolt, for well over a year prior to the February 2010 advertisement, wrote women in Ethopia and Sri Lanka–the very same women he continued to solicit for child pornography by advertisement and letter at the time his scheme was discovered in February 2010– sharing with them his admitted interest in child pornography and discussing his desire to obtain images of child pornography from them in exchange for financial assistance.

Next and similarly, evidence of Sebolt's previous attempts while incarcerated to obtain nude photographs – particularly nude photographs of children– and either to have the contraband sent to him via mail in hidden compartments in exchange for money, or via a request to a book supplier, is admissible to prove his knowledge and intent, identity, motive, preparation and plan.

Sebolt's prior acts at FCI McCreary were highly similar to much of the conduct at issue in the instant case.  The individual from the Bureau of Prisons who filed the disciplinary report that resulted from Sebolt's efforts to obtain contraband via the mail at FCI McCreary will testify about how Sebolt ultilized the mail to direct and instruct another as to how to circumvent the mail monitoring process in an effort to obtain nude pictures. Also, while at FCI McCreary, Sebolt wrote letters seeking books from different entities, specifically seeking nude photographs of children, just as in the instant case.  In summary, the proffered Rule 404(b) testimony describes conduct and situations highly similar to those at issue in this case, and there is no doubt that the testimony is relevant under *Queen*.

As for necessity, prior acts evidence is considered necessary where, considered in the

light of other evidence available to the government, it is an essential part of the crimes on trial, or it furnishes part of the context of the crime.  *Queen*, 132 F.3d at 998.  Where intent is at issue and the Rule 404(b) evidence is important to the proof of intent, the evidence may be considered necessary.  *Id.*

Here, the proffered evidence is "necessary" under *Queen*, because Sebolt's knowledge and intent are very much at issue, given the elements of the specific offense and Sebolt's use of another individual to carry out–literally– his crime.  In relevant part, the charged offense requires proof that Sebolt knowingly made, printed or published (or caused to be made, printed or published) any notice or advertisement seeking or offering to receive, exchange, buy, produce, display, distribute, or reproduce child pornography and that Sebolt knew or had reason to know that the notice or advertisement would be transported in or affecting interstate or foreign commerce by any means, including by mailing.  Thus, the crime requires proof of knowledge, one of the permissible purposes for which other acts evidence may be admitted.  *See United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007) (evidence of defendant's long-standing interactions with regulatory agency demonstrated that Cooper did not act mistakenly or accidentally in polluting creek); *United States v. Hassanzadeh*, 271 F.3d 574, 578 (4th Cir. 2001) (approving admission of defendant's prior conviction for importing carpets of Iranian origin as relevant and necessary to establish knowledge).  *Cf. United States v. Fleming*, 739 F.2d 945, 949 (4th Cir. 1984) (approving admission in vehicular homicide case of Fleming's driving record under Rule 404(b), as relevant to establish that Fleming had grounds to be aware of risk his drunken driving presented to others).

Turning to the reliablity prong, Rule 404(b) evidence is deemed reliable if it is sufficient to allow the jury to reasonably conclude, by a preponderance of the evidence, that the other acts occurred and that the defendant was the actor. *Huddleston v. United States,* 485 U.S. 681, 689-90 (1988). Here, none of the Bureau of Prisons officials who discovered the various cards and letters and through whom the evidence will be introduced, have any known bias against Sebolt or any interest in this case. Their discovery of the evidence sought to be introduced occurred in the course of their official duties as correctional officers and their accounts of the same are careful, detailed, and un-sensational. Under all of the circumstance, the proffered evidence is therefore reliable.

Finally, once the prior acts evidence has satisfied the above criteria, it may be admitted unless its probative value is *substantially* outweighed by its prejudicial effect. *United States v. Van Metre*, 150 F.3d 339, 350 (4th Cir. 1998); Fed. R. Evid. 403. To exclude evidence pursuant to Rule 403, the district court must be convinced "that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *Id.* Moreover, there is no unfair prejudice under Rule 403 when the extrinsic act is no more sensational or disturbing than the crimes with which the defendant is charged. *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995), *see Van Metre*, 150 F.3d at 351. Here, Sebolt's previous concerted efforts to obtain child pornography as evidenced in the outgoing letter to Sri Lanka, the incoming letter from Ethiopia, and the letters Sebolt wrote at FCI McCreary, all provide evidence of his knowledge and intent with respect to the charged offense, as well as proof of identity, motive, preparation and plan, and none of the evidence sought to be introduced is more sensational than the crime alleged in the indictment.

In summary, evidence regarding correspondence to and from Sebolt in December 2008 as well as Sebolt's letters while incarcerated at FCI McCreary, all of which are probative of Sebolt's consistent efforts to obtain nude pictures of children, meets all of *Queen*'s requirements, and the evidence is therefore admissible under Rule 404(b).

### IV.        Conclusion

Pursuant to Rule 404(b) of the Federal Rules of Evidence, this Court should order that the outgoing card to Sri Lanka, the incoming card from Ethiopia, the letters to "Dover Pubns" and "Ciela LLC" and the letter to "Candy Brown" are admissible at the trial in this case.

Respectfully submitted,

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

_____/s/_____
Elizabeth C. Wu
Assistant United States Attorney
Thomas K. Johnstone, IV
Special Assistant United States Attorney
600 East Main Street, Suite 1800
Richmond, VA  23229
Tel. (804) 819-5400
Fax (804) 771-2316
elizabeth.c.wu@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of September, 2012, I have electronically filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Valencia Roberts, Esq.
Assistant Federal Public Defender
Office of the Federal Public Defender
701 East Broad Street, Suite 3600
Richmond, VA 23219
valencia_roberts@fd.org

_____/s/_____
Elizabeth C. Wu
Assistant U.S. Attorney
Thomas K. Johnstone, IV
Special Assistant U.S. Attorney
600 E. Main St., Suite 1800
Richmond, VA 23229
Tel.  (804) 819-5400
Fax. (804) 771-2316
elizabeth.c.wu@usdoj.gov