**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4093

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

PHILIP MICHAEL SEBOLT,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.   John A. Gibney, Jr., District Judge. (3:12-cr-00033-JAG-1)

Argued:  December 11, 2013        Decided:  February 11, 2014

Before GREGORY, DAVIS, and WYNN, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished opinion.  Judge Gregory wrote the opinion, in which Judge Davis and Judge Wynn joined.

**ARGUED:**   Frances  H.  Pratt,  OFFICE  OF  THE  FEDERAL  PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.   Thomas Kennerly Johnstone  IV,  OFFICE  OF  THE  ATTORNEY  GENERAL  OF  VIRGINIA, Richmond,  Virginia,  for  Appellee.   **ON  BRIEF:** Michael  S. Nachmanoff,  Federal  Public  Defender,  Alexandria,  Virginia, Valencia D. Roberts, Assistant Federal Public Defender, OFFICE OF  THE  FEDERAL  PUBLIC  DEFENDER,  Richmond,  Virginia,  for Appellant.    Neil  H.  MacBride,  United  States  Attorney, Alexandria, Virginia, Elizabeth C. Wu, Assistant United States

Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

    The defendant, Philip Michael Sebolt, was charged in a one-count indictment with advertising child pornography, in violation of 18 U.S.C. § 251(d).  At trial, the government sought to introduce five exhibits under Federal Rule of Evidence 404(b).  Over the defendant's objections, the district court admitted the materials, ruling that they helped establish the defendant's identity.  After a bench trial, the district court found the defendant guilty.  At sentencing, the court increased his criminal history category from IV to V, finding him to be a "repeat and dangerous sex offender" pursuant to United States Sentencing Guidelines § 4B1.5., and sentenced him to life in prison.  On appeal, the defendant argues that the court erred in (1) admitting the identity evidence, and (2) calculating his Sentencing Guidelines range.  For the following reasons, we affirm in part, vacate in part, and remand for resentencing.

I.

    In March of 2012, Sebolt was charged with, between January 1, 2010 and February 19, 2010, creating a "notice or advertisement" seeking to purchase child pornography, in

3

violation of 18 U.S.C. § 2251(d).[1] At the time of the charged conduct, Sebolt was an inmate at F.C.I. Petersburg serving a sentence for child pornography offenses.

The document at the heart of the prosecution[2] is a handwritten flyer seeking, in graphic terms, pictures of nude, prepubescent children posing in various positions. The flyer offers various sums of money for the pictures depending on the pose or sexual act depicted. The reverse side of the flyer includes photographs of nude children as well as graphic drawings of the type of photos the author is seeking.

Prison officials discovered the flyer in a box of materials in the possession of another inmate at F.C.I. Petersburg, Randall Russell Bland. The box was searched in February 2010 as Bland was set to be released from prison following completion of his sentence for distribution of child pornography. The box contained several dozen copies of the flyer in envelopes that had been addressed to various individuals in foreign countries. In particular, two of the envelopes were addressed to Buddhika

---

[1] Sebolt had previously been convicted of two or more offenses relating to the sexual exploitation of children, subjecting him to a 35-year mandatory minimum term of imprisonment. 18 U.S.C. § 2251(e).

[2] As discussed further below, the government contends that several of the challenged exhibits are intrinsic to the charged offense and that the flyer was therefore not the sole basis for the prosecution.

Jinadari and Roda Tekeste, women living in Sri Lanka and Ethiopia, respectively. The government contended that Sebolt gave Bland the flyers for Bland to deposit in the mail once he was out of prison. The flyer instructs recipients to mail the requested photographs to "Phil c/o Russell Cain" at a mail route box address in Salem, West Virginia. At trial, Bland testified that Russell Cain is his given name, and that the address belonged to an aunt of his.

Prior to Sebolt's trial, the government submitted notice of its intent to introduce evidence pursuant to Rule 404(b). Specifically, the government planned to introduce five letters sent to or from Sebolt while in prison. The documents were discovered by prison officials monitoring Sebolt's mail.

The first two exhibits were 2006 and 2007 handwritten requests to book publishers seeking information on two books: "Children: A Picture Archive of Permission-Free Illustrations" and "Children Are Children: Photographs from Nine Countries." The requests, which were signed by Sebolt and included his Federal Bureau of Prisons register number ("BOP number"),[3] asked whether the books contained photos or illustrations.

---

[3] At oral argument, Sebolt conceded that he is the author or intended recipient of each of the five challenged exhibits.

The third document was a 2007 letter signed by Sebolt and addressed to an individual named Candy Brown. The letter offered Ms. Brown twenty dollars in exchange for explicit photos of young women. The letter also contained detailed instructions for creating a compartment on the inside of store bought greeting cards in which the photos could be hidden and mailed into the prison undetected.

The fourth document was a December 2008 Christmas card from Sebolt to Ms. Jinadari in Sri Lanka. The card contained a hidden compartment like the one described in the letter to Ms. Brown. Inside the compartment was a letter from Sebolt discussing his "photo collecting hobby" and offering to send Ms. Jinadari money in exchange for photographs. The letter did not discuss the type of photographs requested, but it noted the need for secrecy and instructed Ms. Jinadari to send the photos in a similar hidden compartment.

The fifth and final challenged document was a December 2008 greeting card sent to the defendant by Ms. Tekeste in Ethiopia. Inside the card was a hidden compartment containing a photograph of a nude female toddler in a sexually suggestive pose. Along with the photograph was a letter from Ms. Tekeste to Sebolt thanking him for money he had previously sent her and indicating

that the photo was provided in response to Sebolt's request for help with his "hobby."[4]

Sebolt filed a motion in limine seeking to exclude the five proposed exhibits as improper character evidence. His argument in support of the motion made clear that his primary defense in the case would be that someone else -- likely Bland -- authored the flyer in question. Sebolt argued that he "was not in possession of the flyer or any of the letters [when they were found]. . . . [Instead] it was the government's key witness, Randall Bland, who had the flyer, who had other items, who had mail." J.A. 71-72.

The district court denied the defendant's motion to exclude the evidence, ruling that the letters were admissible to show "proof of motive, opportunity, intent, preparation, planning, knowledge, identity, or absence of mistake or accident" under Rule 404(b). Specifically, the court noted that the defendant had made the identity of the flyer's author a key issue in the case:

> I can't help but note that counsel just argued that Mr. Bland had this pamphlet in his possession, and it sounds to me like [the defendant] was trying to point the finger at him as the criminal agent in this case.

---

[4] The letter states, "Phil really I don't know what sense to give the people children nacked [sic] photos. In my way, I don't care for the nacked [sic] children photos also I'm not agree by these hobby [sic]." J.A. 406.

7

> So establishing identity is apparently an issue that's not just hypothetical, but that is an issue in this case.

J.A. 71-72.

In addition to the five challenged documents discussed above, the government introduced several other materials attempting to link Sebolt to the flyer. One such item, also found in Bland's possession, was a series of form letters to book publishers and prison book programs requesting books on child care, child development, artistic nudity, and nomadic and indigenous tribes throughout the world. The letters requested that the books contain photographs and that nudity was preferred. Each of the letters contained Sebolt's name and BOP number.

The government also introduced a National Geographic book that was discovered in a locker in Sebolt's cell. The back cover of the book contained a hidden compartment, in which were photographs of nude children that matched the photographs found in the flyer.[5]

---

[5] Also found in Bland's box, and introduced at trial, was a letter written to Ms. Tekeste that was signed in Sebolt's name and BOP number. The letter offered Ms. Tekeste the opportunity to earn money in exchange for sexually graphic photos of a child named Ezana. The letter also included sexually graphic sketches similar to those included on the flyer. The letter requested that the pictures be sent to "Phil c/o Russell Cain" at the same mailing address found in the flyer.

At trial, Sebolt continued to deny any involvement in creating the flyer. In pointing the finger at Bland, he repeatedly referenced Bland's past history with child pornography and the fact that the flyer was found in Bland's possession. In his closing argument, the defendant stated that "it is Mr. Bland who is the real culprit in this." J.A. 255. Sebolt also specifically denied that the National Geographic book found in his cell belonged to him.

At the conclusion of trial, the district court found Sebolt guilty. The court relied in part on the Rule 404(b) evidence, stating that "the evidence shows that the pamphlet or flyer is very similar in writing to other items which are pretty clearly linked to Mr. Sebolt." J.A. 261. The court also noted that the photographs in the flyer were the same as those in the National Geographic book found in Sebolt's cell, and that the book contained a secret compartment that was just like those in the greeting cards.

At sentencing, the court increased Sebolt's criminal history category from IV to V, finding him to be a "repeat and dangerous sex offender" pursuant to U.S.S.G. § 4B1.5. The court also applied a two-level enhancement for distribution pursuant to U.S.S.G. § 2G2.1(b)(3). Sebolt's total offense level was determined to be 38, resulting in a Sentencing Guideline range

of 420 months to life.[6] Noting an intention to sentence the defendant to the high-end of his Guidelines range, the court imposed a sentence of life in prison.

## II.

### A.

As an initial matter, the government briefly contends that the December 2008 letters are intrinsic to the charged offense and are therefore outside the scope of the Rule 404(b) analysis. See United States v. Otuya, 720 F.3d 183, 188 (4th Cir. 2013). We have held that other bad acts evidence is intrinsic to the charged offense "if, among other things, it involves the same series of transactions as the charged offense, which is to say that both acts are part of a single criminal episode." Otuya, 720 F.3d at 188 (internal quotation marks and citations omitted). We find no merit in the government's contention that the 2008 letters constituted the beginning of a single criminal enterprise that continued through the attempted dissemination of the flyer in 2010. The 2008 letters were personal correspondences with specific individuals concerning requests to directly provide Sebolt with pornographic images in prison. In

---

[6] Sebolt faced a statutory mandatory minimum sentence of 420 months because of his two prior convictions. See 18 U.S.C. § 2251(e).

contrast, the flyers were general advertisements for child pornography that requested the photographs be mailed to an address outside the prison. Additionally, the government has put forth no evidence that Sebolt continued to communicate or request child pornography from these or any other individuals during the 14-month interim. Accordingly, we will analyze all of the challenged exhibits under Rule 404(b), reviewing for abuse of discretion. See United States v. McBride, 676 F.3d 385, 395 (4th Cir. 2012).

Generally, evidence of "a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence, however, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Id. 404(b)(2). Importantly, Rule 404(b) is "an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." United States v. Powers, 59 F.3d 1460, 1464 (4th Cir. 1995) (emphasis in original) (quoting United States v. Percy, 765 F.2d 1199, 1203 (4th Cir. 1985)).

We apply a four-part test for determining the admissibility of extrinsic acts evidence. To be admissible, the evidence must be (1) relevant to an issue other than the general character of

11

the defendant; (2) necessary to prove the charged offense; (3) reliable; and (4) its probative value must not be substantially outweighed by any prejudicial effect, as measured by Rule 403. United States. v. Lighty, 616 F.3d 321, 352 (4th Cir. 2010). Applying these principles to the facts of this case, we agree with the district court that the five exhibits were admissible for the purpose of proving that Sebolt created the flyer.

Looking first at the question of relevancy, as a general matter, this is not a difficult standard to meet. To be relevant, the evidence "need only to have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." United States v. Aramony, 88 F.3d 1369, 1377 (4th Cir. 1996) (internal quotation marks omitted). Of course, central to the Rule 404(b) analysis is the requirement that the evidence be relevant for some reason "other than the general character of the defendant . . . ." United States v. Hodge, 354 F.3d 305, 312 (4th Cir. 2004). We conclude that each of the five pieces of evidence in question provided a link between Sebolt and the flyer without improperly implicating the question of his character. First, the 2008 letters to Ms. Jinadari and from Ms. Tekeste established pre-existing relationships between Sebolt and these individuals. This is important because they were both intended recipients of copies

12

of the flyer found in Bland's possession. It is also clear from the letters that these relationships were centered on secretly exchanging photographs for money. Thus, the letters make it more likely that the flyer, which sought to exchange nude photos of children for money with these same individuals, was created by Sebolt and not Bland, who had no similar connection with Ms. Jinadari and Ms. Tekeste. Additionally, the government's handwriting expert testified that it was highly probable that the same person who drafted the letter to Ms. Jinadari, which was signed in Sebolt's name and BOP number, also created the flyer.

Next, the March 2007 letter to Candy Brown was relevant to showing that the National Geographic book found in Sebolt's cell belonged to him, a fact he specifically put in dispute at trial. The district court noted that the book contained a secret compartment similar to the one in the greeting cards, the design of which was discussed in detail in the letter to Ms. Brown. Thus, the letter made it more likely that the book belonged to Sebolt, which in turn helped show that the flyer, which contained the same photographs found in the book, was created by him.

Finally, the 2006 book requests provided yet another connection between Sebolt and the flyer. The requests were similar to other request forms found in Bland's box and signed

13

by Sebolt. The requests therefore indicated that at least some of the materials found alongside the flyer belonged to Sebolt. Although this connection was to some extent similar to those demonstrated by the other materials, it supported the Government's contention that Sebolt was the source of the documents found in Bland's box, including the flyers, and that he gave Bland the documents to safely place in the mail following his release from prison.

In all of these ways, the disputed evidence did more than merely establish Sebolt's propensity for soliciting child pornography. To the contrary, they each indicated a specific connection between Sebolt and the flyer that helped show he was its author.

The defendant notes that our case law concerning 404(b) evidence admitted for the purpose of proving identity has generally required that the other acts demonstrate a "signature crime" or "modus operandi." See, e.g., United States v. Haney, 914 F.2d 602, 607 (4th Cir. 1990). He contends that this degree of similarity is lacking in this case. We simply disagree, and are comfortable concluding that handwritten communications concerning the exchange of money for photos with two specific individuals in distant countries, as well as repeated references to secret photo-storing compartments on the inside of greeting cards, satisfies this requirement.

14

For many of the same reasons that the exhibits were relevant, each was also necessary to proving the government's case. See McBride, 676 F.3d at 396 (stating that the relevancy and necessity factors, "which embody overlapping concerns, are often considered in tandem"). Evidence is necessary when it is "an essential part of the crimes on trial" or it "furnishes part of the context for the crime." United States v. Byers, 649 F.3d 197, 209 (4th Cir. 2011). The primary issue at trial was whether Sebolt created the flyer. Given that the copies of the flyer were found in Bland's possession, it was necessary for the government to establish a connection to Sebolt through other means. It did so by using similarities in the handwriting, the intended recipients, and the content of the flyer and other works attributed to Sebolt. Without this evidence, the government would have been forced to rely largely on the word of Bland, a convicted felon and the person at whom Sebolt was pointing the finger. Given these circumstances, we conclude that the disputed exhibits satisfy the necessity requirement of our Rule 404(b) analysis.

Turning next to the reliability prong, there is no reason to think that the 404(b) evidence was not reliable. The witnesses through which the exhibits were introduced were cross-examined by the defendant, see Queen, 132 F.3d at 998, and there was no indication of bias or untruthfulness on their part, see

15

id. Additionally, although the defendant insinuated at trial that he had no knowledge of or involvement with any of the disputed exhibits, they all bore sufficient indicia that he was the author or intended recipient of each, as counsel has now acknowledged.

Finally, as with all evidence, proposed Rule 404(b) evidence must not be substantially more prejudicial than probative to the defendant, as determined by Rule 403. Byers, 649 F.3d at 210. We have previously acknowledged that, in the context of a bench trial, there is less concern that the finder of fact will utilize evidence for an improper purpose. See United States v. Hassanzadeh, 271 F.3d 574, 578 (4th Cir. 2001) ("[W]e have confidence that at the bench trial, the experienced district judge was able to separate the emotional impact from the probative value of this potentially prejudicial evidence."); see also Shultz v. Butcher, 24 F.3d 626, 632 (4th Cir. 1994) (holding that in civil bench trials "evidence should not be excluded under [Rule] 403 on the ground that it is unfairly prejudicial"). Indeed, we are unable to find a single published case in which a court of appeals reversed a district court's admission of extrinsic evidence in a bench trial. For all of the reasons previously stated, as well as our confidence in the district court's ability to sort through any potentially

16

prejudicial impact of the disputed evidence, we decline to be the first. We therefore affirm the defendant's conviction.

B.

The defendant also challenges the procedural reasonableness of his sentence. He argues, and the government concedes, that the district court improperly increased his criminal history category from IV to V after finding that he was a repeat and dangerous sex offender under U.S.S.G. § 4B1.5. We agree.[7]

Section 4B1.5 of the Guidelines increases a defendant's criminal history category to V when the defendant's offense of conviction is a covered sex crime and the defendant has at least one prior sex offense conviction. However, § 4B1.5's application notes explicitly exclude from the definition of covered sex crime, among other things, "trafficking in, receipt of, or possession of, child pornography . . . ." U.S.S.G. § 4B1.5 cmt. n.2. The defendant's prior conviction was for violating 18 U.S.C. § 2251(d)(1)(A), which criminalizes advertising "to receive, exchange, buy, produce, display, distribute, or reproduce[] [child pornography] . . . ." Because

---

[7] The defendant did not object to this issue at sentencing, and so our review is for plain error. United States v. Cotton, 535 U.S. 625, 631 (2002). Plain error exists where the defendant can establish that an error occurred, that it was plain, and that it affected the defendant's substantial rights. United States v. Olano, 507 U.S. 725, 732–36 (1993).

that statute includes both conduct that falls within the exception in § 4B1.5, i.e., "trafficking in, receipt of, or possession of, child pornography," as well as conduct that is not exempted, i.e., the production of child pornography, it is appropriate to apply the modified categorical approach to determine the precise scope of the crime of conviction. See Descamps v. United States, 133 S. Ct. 2276, 2284-2286 (2013). However, the government concedes that it has no Shepard-approved documents showing that Sebolt was engaged in the production of child pornography. See Shepard v. United States, 544 U.S. 13, 16 (2005). Without these, it is unable to show that Sebolt's conviction was for conduct that is not exempted from the covered sex crime definition in U.S.S.G. § 4B1.5 cmt. n.2. It was therefore error to apply the enhancement and increase the defendant's criminal history category to V.

Further, it is clear that the error harmed Sebolt's substantial rights. Had he been sentenced under a criminal history category IV, his Guidelines range would have been 324 to 405 months which becomes the statutory mandatory minimum of 420 under U.S.S.G. 5G1.1(b), instead of 420 months to life, assuming the same total offense level. Because the district court stated its intention to sentence Sebolt "at the very top of the guidelines," J.A. 341, the sentence of life imprisonment clearly harmed him. We therefore vacate the defendant's sentence and

18

remand the case for resentencing. In light of the remand, we need not reach the defendant's second argument that the district court erred in applying a two-level enhancement for distribution of child pornography under U.S.S.G. § 2G2.1(b)(3). The defendant is free to again raise that objection in the district court if he wishes.

III.

For the reasons stated, we affirm the defendant's conviction, vacate his sentence, and remand for resentencing.

<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED</u>