**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **Criminal Action No. 3:12CR33-JAG** |
| | ) | |
| PHILIP M. SEBOLT, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**GOVERNMENT'S MOTION FOR UPWARD DEPARTURE AND VARIANCE
AND POSITION ON RESENTENCING**

The United States of America, by and through its undersigned counsel,

hereby provides its position with respect to the resentencing of the defendant, Philip

Sebolt:

**INTRODUCTION**

On February 11, 2014, the United States Court of Appeals for the Fourth

Circuit vacated the defendant's original sentence and remanded his case to this

Court for resentencing.  On remand, the defendant's advisory guideline range is

statutorily restricted to 420 months' imprisonment, resulting from a total offense

level of 36 and a criminal history category IV.  18 U.S.C. § 2251(e).  However,

pursuant to U.S.S.G. § 4A1.3 and the factors contained in 18 U.S.C. § 3553(a), the

United States respectfully moves this Court: (1) for a departure increasing the

defendant's criminal history category from IV to V; and (2) to vary upward by two

offense levels to a total offense level of 38, which would result in a restricted

advisory guideline range of 420 months to life imprisonment.  For the reasons

stated herein, the United States requests a sentence of life imprisonment.

### STATEMENT OF FACTS

**I.      Defendant's Original Federal Child Pornography Convictions**

In March 2002, an agent with the Federal Bureau of Investigation ("FBI") in

Illinois identified an individual running a file server on the Internet with large

amounts of child pornography available for trading.  When the agent logged onto

the file server, he encountered a banner scrolling across a website that read:

> Upload Boy Baby Pics! Upload Boy Baby Pics! Upload Boy Baby Pics!
> Upload Boy Baby Pics! Upload Boy Baby Pics! I'm also looking for a
> text file or someone to msg me, on tips/tactics/advice on how to molest
> kids.  I am not out to hurt or kidnap a kid.  Just fun loving molesting.
> I have a web cam and am willing to produce pics if I can successfully
> molest a kid/baby.  Any help would be nice. :)

The agent also successfully downloaded at least two files containing child

pornography from the file server.

Through further investigation, the agent tracked the location of the file

server to the defendant's residence in Bensenville, Illinois.  The agent obtained a

search warrant for the defendant's residence, which was executed on July 1, 2002.

During the search, FBI agents encountered the defendant in his bedroom

attempting to delete files from his computer.  After securing the defendant's

computer, FBI agents advised the defendant of his *Miranda* rights and asked if he

would like to speak with them.  The defendant agreed to speak with agents and

admitted to running the file server from his personal computer in his bedroom and

that the file server's purpose was to trade child pornography.  The defendant also admitted that he had sexually molested a young male relative beginning when the child was six years old and continuing until he was eight years old.  The defendant further admitted engaging in a sexual relationship with a sixteen-year-old female in Wisconsin he met on the Internet.

A subsequent forensic examination of the defendant's computer revealed the presence of 27,000 images of child pornography.  The child pornography files included images of children of all ages engaged in sexually explicit conduct, as well as sadistic or masochistic conduct, with other children and adults.  The forensic examination also revealed a folder named "How to Molest," which contained transcripts of online chats between the defendant and other individuals.  The transcripts include statements by the defendant discussing, among other things, the children he had successfully molested, his numerous attempts to molest other children, and the methods he had employed to do so.

In March 2003, a federal grand jury in Illinois returned an indictment charging the defendant with possession of child pornography, transporting child pornography, and advertising child pornography online.  After a four-day trial, a jury convicted the defendant of all counts.  The district court sentenced the defendant to 360 months' imprisonment on March 3, 2004.

II.     **Defendant's State Molestation Convictions**

The defendant admissions related to his molestation of his young male relative during his interview with FBI agents resulted an independent investigation by state law-enforcement authorities in DuPage County, Illinois.  The state investigation revealed that the defendant's molestation of his six-year-old male relative occurred on numerous occasions between December 1, 1997, and December 31, 1998.  The molestation involved the defendant fondling the victim's genitals and performing oral-genital sexual intercourse on the victim while the defendant masturbated.  The state investigation also revealed that the defendant had molested a young female who was in the fourth or fifth grade at the time.  The molestation occurred between December 14, 1997, and December 14, 1999, and involved the defendant digitally penetrating the victim's vagina, the defendant performing oral-genital sexual intercourse on the victim, and forcing the victim to fondle the defendant's genitals.

The Illinois investigation resulted in the defendant being charged with and convicted of two counts of predatory criminal sexual abuse of a child in DuPage County Circuit Court.  On May 24, 2006, the defendant was sentenced to fourteen years' imprisonment on the first count and thirteen years ten months' imprisonment on the second count, for a total sentence of twenty-seven years ten months.  The circuit court ordered that the two sentences run consecutively to each other, but concurrently to the defendant's federal sentence.

### III.    Defendant's Pending Federal Child Pornography Conviction

At the conclusion of the Illinois proceedings, the defendant was transferred to the custody of the Federal Bureau of Prisons ("BOP").  The defendant began serving his 360-month sentence at the United States Penitentiary in McCreary, Kentucky, ("USP McCreary") in or about July 2006.  Almost immediately, prison officials at USP McCreary discovered that the defendant was attempting to use the mail to receive images of children, including nude children, at the prison.  For instance, the defendant sent letters to book publishers asking for books containing photographs or illustrations of children.  In March 2007, the defendant sent a letter to a woman identified as "Candy Brown" asking for nude photographs of "barely legal teens" and including detailed instructions on how the recipient could create a hidden compartment to conceal the photographs in her response to the defendant.

In April 2008, the BOP transferred the defendant to the Federal Correctional Institution in Petersburg, Virginia ("FCI Petersburg").  In December 2008, prison officials at FCI Petersburg intercepted two mailings involving the defendant.  The first mailing was a Christmas card the defendant was attempting to send to a woman in Sri Lanka.  Upon further inspection, prison officials discovered a hidden compartment on the back of the Christmas card, which contained a handwritten letter from the defendant in which he discussed his "photo collecting hobby" and offered to send the recipient money in exchange for photographs depicting nude children.  The second mailing was a greeting card sent to the defendant by a woman

in Ethiopia named Roda Tekeste.  A more thorough inspection of the greeting card revealed a hidden compartment containing a letter from Tekeste referencing the defendant's "hobby" and thanking him for money he had sent her.  The hidden compartment also contained a color photograph of a nude female toddler with her genitals lasciviously displayed.

In February 2010, prison officials at FCI Petersburg discovered dozens of letters the defendant had given a fellow inmate to mail from outside the prison after his scheduled release.  Among the letters were fifteen envelopes containing an advertisement seeking child pornography; fifty-two envelopes containing copies of a form letter to book publishers and prison book programs requesting books containing photographs of nude children; a letter from the defendant to Roda Tekeste; and a letter from the defendant to Christina Sykora, a female sex offender in the custody of the Illinois Department of Corrections.

The fifteen letters containing the advertisements seeking child pornography were addressed to various individuals in numerous foreign countries.  The defendant had written the advertisement by hand and produced photocopies for each mailing.  The advertisement was styled as a flyer requesting color photographs of nude, prepubescent children posed in various positions in exchange for U.S. currency.  Specifically, the advertisement mandated that "photos <u>must</u> be in color and any part of, or all of, children's genitalia (penis, penis head, ball sack, vulva, cliterous [sic], vaginal opening, butt, butthole) <u>must</u> be exposed in each photo."  The

advertisement then described the prices the defendant was willing to pay for photographs depicting children engaged in various sexual activities.  For instance, the defendant would pay $10 for each photograph of a child masturbating, $15 for each photograph depicting a child having his or her genitals fondled by another child or an adult, $20 for each photograph depicting a child engaged in oral-genital sexual intercourse, and $25 for each photograph depicting a child engaged in genital-genital sexual intercourse.  Finally, the advertisement stated that the defendant would pay an additional $2 per photograph for close-up photographs of children's genitals and an additional $5 per photograph for photographs displaying the inner parts of a girl's vagina or a boy's erect penis.  On the reverse side of the advertisement, the defendant provided examples of the types of photographs in which he was interested in a collage of photographs depicting nude children, as well as hand-drawn sketches of children's genitals in various positions.

The fifty-two form letters to book publishers and prison book programs contained the defendant's name and BOP registration number and requested books on child care, child development, artistic nudity, nomadic and indigenous tribes in Africa, South America, and the south Pacific, and the inhabitants of destitute and impoverished countries.  For each entry, the letter stated that the books requested must contain photographs and that nudity was preferred.

In his letter to Roda Tekeste, the defendant offered to pay her $5 in exchange for sexually explicit photographs of "Ezana," in which he is completely nude with

"close-up photos of his <u>erect</u> penis in various angles and positions."  The defendant also encouraged Tekeste to send photographs of her "fondling, kissing, licking and sucking on [Ezana's] fully erect penis."  In closing, the defendant stated that he "cared[d] about the health and financial well-being of both you and Ezana."  He signed the letter with his name and registration number.

Finally, in his letter to Christina Sykora, the defendant introduced himself as a person with "similar sexual desires" and "similar interests."  The defendant then discussed his criminal history, including a detailed description of his history molesting children.  With respect to his molestation of children, the defendant stated, "I miss it and cannot wait until I can have fun again.  But next time in another country thats [sic] more accepting."

In March 2012, a federal grand jury of this Court returned an indictment charging the defendant with one count of advertising child pornography after having been convicted of two or more prior offenses, in violation of 18 U.S.C. § 2251(d)–(e).  On September 13, 2012, at the conclusion of a bench trial, the Court convicted the defendant of the offense and continued his sentencing until January 28, 2013.

In December 2012, while the defendant was awaiting sentencing, prison officials at the Federal Correctional Institution in Waseca, Minnesota ("FCI Waseca"), intercepted a letter from the defendant to Tracey Wright, a female inmate serving a prison sentence for receipt and possession of child pornography.  In the

letter, which is dated December 6, 2012, the defendant expressed his desire to "find a female around [his] age who shares or who would be willing to explore together the same that I'm into." The defendant also described his sexual preference for prepubescent children, his history of molesting children, and his involvement with child pornography. It appears the defendant sent the letter to a family member in Illinois, who then forwarded the letter to FCI Waseca.

At his original sentencing, the defendant showed no remorse for any of his actions. As the Court correctly pointed out the defendant was totally "unrepentant," declining to apologize to any of the children he has exploited, to any of the parents he solicited to abuse their own children, or to the BOP for trying to secrete contraband into its facilities. Because the defendant lacks any respect for the law, has no willingness to change his behavior, presents an extreme danger to children, the Court sentenced the defendant to life imprisonment.

On appeal, the Fourth Circuit affirmed the defendant's conviction, but vacated his original sentence and remanded the case to this Court for resentencing. The sentencing issues on appeal related to the increase of the defendant's criminal history category from IV to V based on a finding that he qualified as a "repeat and dangerous sex offender" pursuant U.S.S.G. § 4B1.5 and the application of a two-point enhancement for distribution. Based on *Descamps v. United States*, 133 S. Ct. 2276 (2013), which was decided after the defendant's original sentencing, the Fourth Circuit, with the government's concession, ruled that the defendant did not

9

qualify as a "repeat and dangerous sex offender" under § 4B1.5.  In addition, for resentencing, the United States has agreed to forego the application of the two-point enhancement for distribution under § 2G2.1(b)(3).

## ARGUMENT

### I.   Motion for Upward Departure

#### A.   Applicable Law

Before departing from a calculated guideline range, a district court must engage in the analysis prescribed by *United States v. Rybicki*, 96 F.3d 754 (4th Cir. 1996); *see also Koon v. United States*, 518 U.S. 81 (1996); *accord United States v. Moreland*, 437 F.3d 424, 432–33 (4th Cir. 2006) (finding that traditional departure analysis still applies to post-*Booker* federal sentencings).  In discussing the proper procedure for departure, the Fourth Circuit noted that each guideline "attempts to anticipate a broad range of typical cases—a 'heartland'— that is representative of the circumstances and consequences of ordinary crimes of the type to which the guideline applies." *Rybicki*, 96 F.3d at 757.  Only if a district court determines that the facts and circumstances of a particular case place it outside the guideline's heartland may it exercise its discretion to depart from the calculated sentencing guideline range.  *Id.*

To ensure some degree of consistency, the Fourth Circuit has articulated a five-step analysis that district courts must complete when determining whether a departure is appropriate.  *Id.*  First, the district court must engage in a factual

inquiry to determine the circumstances and consequences of the offense of conviction.  *Id.*  Second, the district court must decide whether any of the identified circumstances or consequences of the offense of conviction appear "atypical."  *Id.*  Third, the district court must determine whether the potential bases for departure are forbidden, encouraged, discouraged, or unmentioned factor under the guidelines.  *Id.*

Fourth, once properly classified, the district court must decide whether the particular factor was "adequately considered by the Sentencing Commission in formulating the guidelines."  *Koon*, 518 U.S. at 92.  If a particular factor has been forbidden by the Sentencing Commission, the sentencing court cannot use it as a basis for departure.  *Id.* at 95.  If, however, the basis for departure is an encouraged factor and that factor is not taken into account by the guidelines, the court may depart on that basis.  *Id.* at 95–96.  If the encouraged factor is already taken into account by the applicable guidelines, the sentencing court may depart "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present."  *Id.* at 96. "Discouraged factors," such as family ties and responsibilities or educational and vocational skills, are not ordinarily relevant but may be relied upon as a basis for departure if the court finds that a factor exists to such an uncommon degree that it is outside the heartland of circumstances embraced by the relevant guidelines. *Rybicki*, 96 F.3d at 758 (citing U.S.S.G. §§ 5H1.6, 5H1.2, and 5H1.11).  If the factor

has not been identified as either forbidden, encouraged, or discouraged in the guidelines, it is considered an unmentioned factor. The court then must, "after considering the 'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,' decide whether it is sufficient to take the case out of the Guidelines heartland." *Koon*, 518 U.S. at 96; *see also United States v. Terry*, 142 F.3d 702 (4th Cir. 1998); *United States v. Hairston*, 96 F.3d 102 (4th Cir. 1996).

Finally, the district court must determine whether the identified circumstances and consequences, when appropriately classified and considered, take the case out of the applicable guideline's heartland and whether departure is justified. *Rybicki*, 96 F.3d at 758. The extent of an upward departure must be "reasonable under the circumstances." *Terry*, 142 F.3d at 707 (4th Cir. 1998). "In determining what is reasonable under the circumstances, the sentencing court should first consider the rationale and methodology of the Sentencing Guidelines." *Id.* (*citing United States v. Ferra*, 900 F.2d 1057, 1061-62 (7th Cir. 1990)). Specifically, a district court may consider the "treatment of analogous conduct in other sections of the Sentencing Guidelines." *Id.* In the event the Sentencing Guidelines do not provide useful analogies, the district "court must set forth some form of principled justification for its departure determination." *Id.* (*quoting United States v. Gary*, 18 F.3d 1123, 1131 (4th Cir. 1994)).

12

B.     <u>A one-level increase to the defendant's criminal history category is warranted based upon the understatement of defendant's criminal history category IV and prior similar adult conduct.</u>

The Probation Officer properly calculated the defendant's criminal history as category IV.  The United States, however, respectfully urges the Court to find that, because the defendant's current criminal history category IV does not adequately reflect the extent and nature of his criminal history or his serious risk of recidivism, a departure increasing the defendant's criminal history category from IV to V is reasonable and appropriate.  U.S.S.G. § 4A1.3(a); *see United States v. Rusher,* 966 F.2d 868, 881 (4th Cir. 1992), *cert. denied*, 506 U.S. 926 (1992).  In forming the basis for such a departure, the Sentencing Guidelines provide that the Court may consider, among other things, prior sentences not used in computing the criminal history category and prior similar adult conduct not resulting in a criminal conviction.  U.S.S.G. § 4A1.3 (a) (2)(A), (E).  An upward departure is warranted in this case given the defendant's extensive criminal history that conclusively demonstrates his serious risk of recidivism and includes multiple convictions for molestation and child pornography, as well as previous similar adult criminal conduct that did not result in a criminal conviction.

1. *Prior sentence not fully used in computing criminal history category*

The defendant is currently 33 years old and has been engaged in a fifteen-year campaign to exploit children.  The defendant has previous federal convictions for possession of child pornography, transporting child pornography, and

13

advertising child pornography in 2004, for which he was serving a 360-month sentence when he committed the instant offense.  During the investigation of his prior federal offenses, the defendant admitted that the purpose of the file server was to trade child pornography, but the investigation also revealed that he used the file server as a means to contact other child pornographers and molesters so he could learn new ways to gain access to and molest children.  The defendant received three criminal history points in the instant case for his prior federal convictions.

The federal child pornography investigation led to the discovery that the defendant had molested at least two children—a six-year-old male relative and a female in fourth or fifth grade—from 1997 to 1999.  The molestations resulted in two convictions for predatory criminal sexual assault of a child in the Dupage County (Illinois) Circuit Court.  The sentences for the state molestation charges were imposed together and resulted in the defendant receiving sentences to run concurrently to his federal sentence.  Because the state sentences were imposed at the same time, the defendant received three criminal history points for one of the sentences and zero criminal history points for the other.  PSR, Worksheet C.  The defendant did receive one additional criminal history point, however, because the second state molestation conviction was not counted in his criminal history calculation.  *Id.*

The second state molestation conviction involved a distinct victim from the defendant's first state molestation conviction and continued for at least a year

longer until December 1999.  Had the second state molestation conviction been treated as a separate sentencing event, the defendant would have received a total of three criminal history points as he did for his first state molestation conviction. Even taking into account the one criminal history point the defendant received on Worksheet C, the criminal history points the defendant received remain two points shy of the total he would have received if his second state molestation conviction had been scored independently.  Factoring in the two additional criminal history points would give the defendant a total of eleven criminal history points and place him within criminal history category V.

2. _Similar prior criminal conduct_

Additionally, U.S.S.G. § 4A1.3 (a)(2)(E) provides that the Court may consider similar prior adult criminal conduct that did not result in a criminal conviction. Upward departures on the basis of dismissed or otherwise unconvicted criminal conduct have been approved by the Fourth Circuit.  *See United States v. Dixon*, 318 F.3d 585, 591 (4th Cir. 2003) *cert denied*, 539 U.S. 922 (2003) (upward departure based in part on four pending charges); *United States v. Walker*, 112 F.3d 163, 166 (4th Cir. 1997) (upward departure based on prior illegal conduct for which the defendant, an attorney, was disbarred but never convicted); *United States v. Barber*, 93 F.3d 1200, 1207–10 (affirming upward departure based on count dismissed pursuant to plea agreement but reversing on other grounds); *United States v. Melton*, 970 F.3d 1328 (4th Cir. 1992) (upholding upward departure in drug case for

15

related but unconvicted murder); *United States v. McKenley*, 895 F.2d 184 (4th Cir. 1990) (upholding upward departure on the basis of prior acquittals by reason of insanity).

Here, the defendant has been relentless in his attempts to prey on, gain access to, and exploit children at home and abroad.  In his interview with the FBI agents investigating his prior federal child pornography offenses, the defendant admitted engaging in a sexual relationship with a sixteen-year-old female in Wisconsin he met on the Internet.  In online chats recovered from his computer in 2002, the defendant discussed stalking children at bus stops, attempting to molest boys who entered a public restroom at a local park, and offering children money to allow him to molest them.  PSR, ¶ 25.

In December 2008, while incarcerated at FCI Petersburg, the defendant sent a letter to a woman in Sri Lanka, discussing his "photo collecting hobby" and offering to send her money in exchange for photographs depicting nude children.  Also in December 2008, the defendant received a letter from a woman in Ethiopia containing a photograph of nude female toddler with her genitals lasciviously displayed.  The letter made clear that the photograph was sent in response to a previous request by the defendant.

In his letter to Christina Sykora, which was recovered from the bundle of letters containing the advertisement at issue in this case, the defendant boasts, "Trust me, as a babysitter, I've touched, licked, sucked, and photographed the

genitals of many little boys & girls as young as infants to as old as 12, usually 5 and under.  I've done it all and tasted some of the best young penis/vagina I can ever taste."  PSR, ¶ 14.  The defendant also stated his intention to continue exploiting children after his release from prison.  "I miss it and cannot wait until I can have fun again.  But next time in another country thats [sic] more accepting."  *Id.*

While none of this conduct resulted in a criminal conviction, it, along with the defendant's extensive criminal history, clearly takes this case outside of the guideline's heartland described in *Rybicki*.  The defendant's similar prior conduct is relevant both to the Court's consideration of an upward departure and also to its consideration of the defendant's history and characteristics pursuant to 18 U.S.C. § 3553(a).  Not only is such consideration allowed under §4A1.3, but reliable evidence, including the defendant's own admissions, points to the probability that, in addition to his other criminal convictions, the defendant has committed numerous other sexual exploitation offenses against children in the past.  And, while the defendant does not technically qualify as a "repeat and dangerous sex offender" under the Guidelines, he has certainly made a career out of exploiting children, perfecting his chosen craft over time and adapting his attempts of exploitation to his current environment and circumstances.

As such, the defendant's currently calculated criminal history of IV substantially underrepresents the seriousness of his criminal history or the likelihood that he will commit other crimes.  The United States submits that a one-

level increase—reflecting the prior sentence not fully factored into his criminal history and his prior similar adult conduct—to criminal history category of V is a more accurate representation of the severity of the defendant's criminal history, as well as his high risk of recidivism.  With an offense level of 36 and a criminal history category of V, the defendant's advisory guideline range is still statutorily restricted to 420 months.  Given the defendant's self-proclaimed intention of recidivism and based upon the factors enumerated in 18 U.S.C. § 3553(a), however, the United States does not believe a sentence of 420 months is adequate in this case.

## II.    Variance Motion and Position on Sentencing

The United States also seeks an upward variance, beyond the requested upward departure, in light of the factors in 18 U.S.C. § 3553(a).  Because the restricted sentencing range of 420 months would fail to adequately reflect the seriousness of the defendant's criminal conduct, that the defendant has wholly failed to accept responsibility for his actions, and that the defendant has proclaimed his intention to continue his sexual exploitation of children in blatant disregard for the law, the Court should vary upward from the restricted advisory guideline range of 420 months and impose a sentence within the guideline range of 360 months to life, reflecting a criminal history category V and a total offense level of 38.

As this Court is well aware, after calculating the applicable guideline range a sentencing court must then consider the sentencing factors set forth in 18 U.S.C. §

3553(a) and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson v. United States,* 555 U.S. 350, 351 (2009); *see also United States v. Hughes,* 401 F.3d 540, 546 (4th Cir. 2005). With respect to § 3553(a)'s enumerated factors, of particular pertinence here are the "history and characteristics of the defendant" and the need for the sentence to "reflect the seriousness of the offense," "promote respect for the law," "protect the public from further crimes of the defendant," and "afford adequate deterrence to criminal conduct." U.S.S.G. § 3553(a)(1), (a)(2)(A), (a)(2)(C) and (a)(2)(B).

A.      Nature and Circumstances of the Offense

While serving a 360-month sentence in the custody of the BOP—first at USP McCreary and then at FCI Petersburg—the defendant persistently sought nude pictures of children through the U.S. mail. At FCI Petersburg, he repeatedly solicited the production of child pornography by the women with whom he corresponded. The defendant played on the vulnerabilities of these women, exploiting their indigence and enticing them with money. He coached and encouraged them to abuse children to whom they had access in a certain way so the resulting photographs would be customized to his personal sexual preferences. He even provided the intended recipients of his correspondence with detailed, hand-drawn sketches of children's genitalia, so there was no question about the type of photographs he was seeking. In exchange, he would pay them a pre-determined fee

for each photograph depending on the type of abuse depicted—the more severe the abuse, the higher the price.

    B.    <u>History and Characteristics of the Defendant</u>

The history and characteristics of the defendant have been discussed in great detail above and all of the reliable information available to the Court points to the defendant's unapologetic refusal to take responsibility for his actions.  The defendant is a repeat sex offender with multiple convictions for possession, transportation, and advertisement of child pornography and predatory assault of a child.  In his letters, the defendant shows no remorse for his actions and even expresses his desire to continue his sexual exploitation of children in the future. During his allocution at his original sentencing hearing, the defendant showed no contrition for his actions, instead blaming the BOP for his behavior.  In fashioning a reasonable sentence, the Court should give strong consideration to the defendant's refusal to recognize his criminal conduct and its consequences and to take any responsibility for it.

    C.    <u>Seriousness of the Offense; Promote Respect for the Law; Provide Just Punishment</u>

This sentencing factor answers the need for retribution, the need the make the punishment fit the crime, and the need for the defendant to be punished justly. The Senate Report discussing this provision states:

> This purpose—essentially the "just desserts" concept—should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct.  From the public's standpoint, the sentence should be of a type and length

that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense.

S. Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 4358-59.

The severity of the defendant's offense and his threat to the safety of the community are beyond question. His prolific writing and multiple offers to purchase newly produced child pornography placed real children in jeopardy and have posed a significant threat to society since his incarceration began. *See New York v. Ferber*, 458 U.S. 747, 760 (1982) (identifying those individuals advertising to sell or buy child pornography as a vital component to the continuation of the market for this vile material). Through his correspondence, the defendant made it known that he was a willing buyer of child pornography created especially for him, and his offers harmed at least one child who was photographed nude with her genitals lasciviously displayed in response to the defendant's solicitations.

The fact that the defendant engaged in this criminal conduct while serving a 360-month sentence for a similar offense makes his behavior even more egregious and lays bare his total lack of respect for the law. With breathtaking clarity, the defendant has demonstrated that he will not change his behavior if he is released from prison. In his letter to Christina Sykora, after discussing his long history of molesting children, the defendant stated, "I miss it and cannot wait until I can have fun again. But next time in another country thats [sic] more accepting."

21

Moreover, he has been entirely undeterred by any of the previous sentences he received for his sex offenses. Neither of his prior sentences—the 360-month federal sentence or the 28-year state sentence—nor his conviction in this Court—as demonstrated by his letter to Tracey Wright in FCI Waseca, which he wrote while waiting the imposition of his original sentence—have done anything to convince him to change his behavior. Instead, he has shifted his tactics, hardened his resolve, and continued to target society's most vulnerable.

The defendant has been given many chances to change his criminal conduct. He has refused to do so, and he is simply too dangerous to be released from incarceration. The extensive and serious nature of the defendant's criminal history, the fact that his prior 360-month sentence did nothing to deter his criminal activity, the defendant's repeated attempts to solicit the production of child pornography while incarcerated, and his continued persistence to contact other sex offenders to "explore" their similar interests require a sentence of life imprisonment.

D.   Need to Deter Future Criminal Conduct

Despite the defendant's demonstrated unwillingness to be deterred and stated intention to continue his sexual exploitation of children upon his release, the best means of deterrence for him specifically, and for all future defendants generally, is a term of life imprisonment. The defendant's intractable failure to recognize, much less acknowledge, the significance of his actions is incredible. He is

an unapologetic recidivist, and a significant sentence is necessary to deter him from reoffending.

      E.    <u>Need to Protect Public from Defendant's Future Criminal Conduct</u>

As the Court noted at the original sentencing hearing, the defendant has victimized countless numbers of children.  He molested at least three children, victimized thousands of others through his child pornography trafficking operation, and exposed dozens of others to potential child sexual abuse through his letters and correspondence while in prison.  By his own admission, the defendant is clearly someone from whom the public needs protecting in the future.  The only way to help ensure the protection of potential victims is through a sentence that will separate defendant from society for the rest of his life.

      F.    <u>Need to Provide Treatment to Defendant</u>

In fashioning a sentence, the Court must consider the need for the sentence to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2)(D).  The defendant clearly needs significant mental health and sex offender treatment.  As such, the United States requests that the Court recommend that the BOP house the defendant in a facility that can provide him with intensive sex treatment while he is incarcerated.

G.     Need to Avoid Unwarranted Disparities

Upon consideration of all of the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a), a sentence at the statutory maximum of life imprisonment is appropriate in this case.  Child sex crimes are among the most despicable of societal and criminal offenses, and the defendant's fifteen-year campaign to prey upon children, even from behind the walls of a federal prison, reflects a level of danger and brazenness rarely seen.  He is among the worst offenders in child exploitation cases.  Considering the defendant's criminal history, the history and characteristics he brings to the Court, his blatant disregard for the law or others, and his near-certain risk of recidivism, the United States believes a sentence of life imprisonment is warranted.

## III.  Conclusion

It is difficult to envision a factual scenario that falls farther outside of the heartland anticipated by U.S.S.G. § 2G2.1 than that presented by the instant case. The defendant has been relentless in his pursuit to exploit minors, both at home and abroad.  His criminal history, offense conduct, lack for remorse, and unabashed intention to continue his criminal behavior if he is released from prison place him in a category all his own.  The factors set forth in § 3553(a) demand nothing less than a sentence of lifetime imprisonment.

Respectfully submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY

By: _____/s/_____
Thomas K. Johnstone IV
Special Assistant United States Attorney
Virginia Bar Number 71120
Virginia Office of Attorney General
900 East Main Street
Richmond, Virginia 23219
Telephone: 804-786-2071
Facsimile: 804-786-1726
tjohnstone@oag.state.va.us

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of July 2014, I filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notification of such a filing (NEF) to the following:

> Mark K. Tyndall, Esquire
> 530 East Main Street, Suite 608
> Richmond, VA  23219

I also certify that, on the 1st day of July 2014, I delivered via email a copy of the Position of the United States with respect to sentencing to:

> Jonathan Andrews
> United States Probation Officer
> 701 East Broad Street, Suite 1150
> Richmond, VA  23219

> _____/s/_____
> Thomas K. Johnstone IV
> Special Assistant United States Attorney
> Virginia Bar Number 71120
> Virginia Office of Attorney General
> 900 East Main Street
> Richmond, Virginia 23219
> Telephone: 804-786-2071
> Facsimile: 804-786-1726
> tjohnstone@oag.state.va.us