IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division


The United States of America,

                              Plaintiff,

              versus          3:12-CR-033

Philip Michael Sebolt,

                              Defendant




Before:  HONORABLE JOHN A. GIBNEY, JR.
         United States District Judge


Re-Sentencing




July 9, 2014
Richmond, Virginia




Gilbert F. Halasz, RMR
Official Court Reporter
U. S. Courthouse
701 East Broad Street
Richmond, Virginia 23219
(804) 916-2248

APPEARANCES




Thomas K. Johnstone, IV, Esq.
For the United States




Mark K. Tyndall,Esq.
For the defendant


The defendant
in his own proper person

1         THE CLERK:  Case number 3:12 CR 33.

2         United States of America versus Philip Michael

3    Sebolt.

4         Mr. Thomas K. Johnstone, IV represents the United

5    States.

6         Mr. Mark K. Tyndall represents the defendant.

7         Are counsel ready to proceed?

8         MR. JOHNSTONE:  United States is ready.

9         MR. TYNDALL:  Ready.

10        THE COURT:  Good morning.

11        MR. TYNDALL:  Ready for Mr. Sebolt, Your Honor.

12        THE COURT:  Good morning, Mr. Sebolt.  How are you

13   today?

14        THE WITNESS:  Good morning.  All right.

15        THE COURT:  Mr. Tyndall, thank you for taking this

16   case over.  I appreciate that.

17        MR. TYNDALL:  Of course.

18        THE COURT:  All right.

19        We are here today to sentence Mr. Sebolt again

20   after his case was remanded from the Fourth Circuit for

21   re-sentencing.  And we have a new presentence report.

22   Other than the issue that Mr. Sebolt has raised about

23   the guidelines, are you aware of any issues,

24   Mr. Johnstone, regarding the presentence report?

25        MR. JOHNSTONE:  No, Your Honor.

1          THE COURT:  Mr. Tyndall, other than that one, are

2     there any other issues?

3          MR. TYNDALL:  No, sir.

4          THE COURT:  Okay.

5          Have you had a chance, Mr. Tyndall, to meet with

6     Mr. Sebolt and go over the presentence report with him?

7          MR. TYNDALL:  Yes, sir.  Yes, sir, I have.

8          THE COURT:  All right.  Okay.

9          Mr. Tyndall, let me hear from you about your

10    issues with how the Sentencing Guidelines should apply

11    in this case.

12         MR. TYNDALL:  Yes, sir.  Your Honor, first of all

13    if this is the appropriate time, perhaps not,

14    Mr. Sebolt has shared with me, and wants me to share

15    with The Court, certificates he received in the Bureau

16    of Prisons.

17         THE WITNESS:  What is it?

18         MR. TYNDALL:  Certificates he has received.

19         THE COURT:  All right.  I will take those.

20         Do you have any objection to those, Mr. Johnstone?

21         MR. JOHNSTONE:  No, Your Honor.

22         MR. TYNDALL:  They have been shared with the

23    government.

24         THE COURT:  Okay.  All right.

25         So what I have here are a certificate of

1    participation to Mr. Sebolt in anger management; in a

2    program on anger management.

3         The certificate of successful completion of

4    beginning guitar class.  And, sorry, there is a

5    certificate of completion of studies in Christian

6    Living.  Advanced guitar class.  And the most recent

7    one is another basic guitar class.  This one looks like

8    it is from a different institution.  And a certificate

9    of completion of a course in life-long health from

10   Terra Haute.

11        I will receive all of these into evidence and put

12   them in the file.

13        MR. TYNDALL:  Thank you, Your Honor.

14        THE COURT:  Thank you for bringing those,

15   Mr. Tyndall.

16        MR. TYNDALL:  Of course.

17        THE COURT:  All right, Mr. Tyndall let's --

18        MR. TYNDALL:  Yes, sir, to address the objections

19   that were filed by Mr. Sebolt.

20        The Fourth Circuit, as The Court knows, decided on

21   February 11th of this year that the government has "No

22   Shepard-approved documents showing that Sebolt was

23   engaged in the production of child pornography.

24   Without these, it is unable to show Sebolt's conviction

25   was for conduct that is not exempted from the covered

1   sex crime definition in USSG 4B1.5 note two.  End of

2   that quote, Judge.

3       Therefore, to be consistent with the Fourth

4   Circuit opinion, Your Honor, it is Mr. Sebolt's

5   position that the Sentencing Guidelines of 2G2.2,

6   specifically small "c," which is cross reference

7   related to production, it references Sentencing

8   Guidelines 2.G2.1, and therefore that is not properly

9   applied.  Going in to that a little more

10  specifically -- and I know The Court has reviewed

11  2G2.2(c), cross reference number one, which said if the

12  offense involved causing, transporting, permitting or

13  offering or seeking by notice or advertisement a minor

14  to engage in sexually-explicit conduct for the purposes

15  of producing a visual depiction of such conduct for the

16  purpose of transmitting a live visual depiction of such

17  conduct, apply 2G2.1.  Obviously a cross reference from

18  one section to the other.  The one that has the higher

19  guideline range is the one that is supposed to be

20  properly applied to The Court.

21      Mr. Sebolt's position is because the Fourth

22  Circuit says the government cannot show production as

23  specific of this offense, that that cross reference

24  should not apply also, because it mandates that

25  production is also found.

1       THE COURT:  All right.

2       MR. TYNDALL:  Under that scenario, Your Honor, if

3    2G2.2 is used for the guideline range, it is our

4    position that it would be a level 27 with a criminal

5    history category of IV, which is a guideline range of

6    one hundred to 127 months.

7       THE COURT:  Okay.

8       MR. TYNDALL:  That is the argument on that.

9       As far as Mr. Sebolt's objection part two of what

10   he filed with this court, which basically I think in

11   broad terms talks about setting aside 18 USC 2251,

12   issue properly found under 18 USC 2252, I rely on what

13   he wrote.

14      THE COURT:  That is pretty much an attack on his

15   conviction --

16      MR. TYNDALL:  It is.

17      THE COURT:  -- and not sentencing.

18      MR. TYNDALL:  It is, Judge.

19      THE COURT:  All right.  Thank you.

20      MR. TYNDALL:  Thank you.

21      THE COURT:  Mr. Sebolt, do you want to add

22   anything to what he said since you are the person who

23   brought this issue before The Court.

24      THE DEFENDANT:  No, Your Honor, I believe he

25   touched on everything that I would bring to the

1    attention of The Court.

2         THE COURT:  Thank you very much.

3         Mr. Johnstone.

4         MR. JOHNSTONE:  Thank you, Your Honor.

5         The way the government reads the defendant's pro

6    se motion, he actually has two objections.  The first

7    is to the application of the cross reference in 2G2.2;

8    and the second, as The Court mentioned, would be an

9    attack on the statutory enhancement for his prior

10   convictions in Illinois.

11        With respect to the Sentencing Guidelines

12   themselves, there is an important distinction to be

13   made between 4B1.5 for repeat sex offenders, and the

14   cross reference in 2G2.2(c).  Specifically, in the

15   definition of covered sex crime in 4B1.5, which the

16   instant offense must be a covered sex crime for the

17   enhancement to apply, the specific definition of

18   covered sex crime includes language specifically

19   exempting out the trafficking or possession of child

20   pornography.  And as the Supreme Court clarified in the

21   Descamps decision, which was post sentencing in this

22   case, that limitation, that limiting language, is to be

23   read broadly.

24        So, in other words, if the defendant's conduct

25   includes behavior that is both exempted and non

1   exempted, then the exempted conduct trumps, for lack of

2   a better word, any enhancement does not apply.  That is

3   why the government conceded that enhancement should not

4   apply in this case.  Because the defendant's conduct

5   encompasses both production, at least the solicitation

6   of production of child pornography, but also the

7   attempted trafficking.  In other words, he was having

8   the people send him the child pornography in the

9   prison.  So it encompassed both exempted and non

10  exempted conduct.  So under the Descamps decision, that

11  enhancement should not have applied.

12      The cross reference in 2G2.2(c), however, contains

13  no limiting language.  In fact, it simply says if the

14  offense involved, causing, transporting, permitting or

15  offering or seeking by notice or advertisement a minor

16  to engage in sexually explicit conduct for the purpose

17  of producing visual depiction of such conduct.

18      THE COURT:  Isn't that what he essentially in

19  those letters to the people overseas asked the parents

20  of those kids to cause their kids to pose in some

21  salacious way?

22      MR. JOHNSTONE:  Exactly, Your Honor.

23      THE COURT:  And that was an advertisement.  And it

24  was an advertisement for the purpose of producing a

25  depiction.  He asked the parents to take the picture.

1          MR. JOHNSTONE:  Correct, Your Honor.  No

2     reasonable person could look at the defendant's conduct

3     and say he was not seeking by notice or advertisement a

4     minor to be used in the production of child

5     pornography.

6          There is no limiting language in this cross

7     reference.  In fact, in application note five in 2G2.2,

8     application note 5A, the sentencing commission says

9     that the cross reference in subsection C1 is to be

10    construed broadly.  And includes all instances where

11    the offense involved employing, using, persuading,

12    inducing, enticing, coercing, et cetera, or seeking by

13    notice or advertisement, a minor to engage in sexually

14    explicit conduct.

15         So when you look at that language broadly the

16    defendant certainly did that.  He enticed these parents

17    with money to use their children to produce child

18    pornography.  So therefore the cross reference is

19    properly applied in this case.

20         THE COURT:  Okay.

21         MR. JOHNSTONE:  Thank you.

22         THE COURT:  Thank you.

23         Mr. Tyndall, do you want to respond to that?

24         MR. TYNDALL:  No, sir.

25         THE COURT:  All right.

1          MR. TYNDALL:  Thank you, Judge.

2          THE COURT:  All right.

3          I find that that cross reference has been properly

4     applied in this case.  So I overrule the objection.  I

5     think that Mr. Sebolt, whatever else he might have

6     done, he certainly sought by notice or advertisement

7     for a minor to engage in sexually explicit conduct for

8     the purpose of producing the visual depiction of such

9     conduct.  That is what he asked the parents to do was

10    to get their young children to pose in a sexually

11    suggestive way for photographs.  And, in fact, as I

12    recall the advertisement in this case, he had a sliding

13    scale of what he would pay the people.  And if it

14    was -- if certain actions were performed, I guess, oral

15    sex performed by the kid it was a certain amount more

16    than the basic price, and if there was genital

17    penetration of the child by an adult it was an

18    additional price above that.  So, I don't see how you

19    can say that it doesn't fall within that cross

20    reference.

21          MR. JOHNSTONE:  Your Honor, I failed to address

22    the second statutory provision.  If I could do that

23    just briefly to put it on the record.

24          THE COURT:  Okay.

25          MR. JOHNSTONE:  As I read it the second objection

1   is the defendant doesn't think the statutory

2   enhancement should apply to him.  But what he is doing

3   in that case, he is conflating the Guidelines with the

4   statutory provisions enacted by Congress.  In this case

5   he was charged under 18 United States Code section 2251

6   D and E.  His prior conviction, certified copies of

7   those convictions were introduced into evidence and

8   considered by The Court.  He was convicted under that

9   statute.  And therefore the statutory provisions are

10  triggered.

11      Thank you.

12      THE COURT:  Thank you.

13      That objection I don't find to be valid either.

14  Really it is not a proper thing to take up at this

15  point because it an attack on his convictions, or the

16  essence of his conviction, I guess, of the enhanced

17  crime.

18      Let me just describe how the guidelines work out

19  in this case.

20      Let me point out as well that even if Mr. Sebolt's

21  interpretation of guideline 2 of the cross reference

22  2G2.1 -- I am sorry.  I keep looking at the wrong one.

23  2G2.(c) -- got too many 2G2's.  2G2.2(c).  Even if I

24  were to adopt his reading of that, it wouldn't make any

25  difference in what the ultimate guideline range is in

1    this case.  Because this is a case in which the

2    sentence is mandated to be 35 years, 420 months, by the

3    code.  And, in addition, it would not make any

4    difference on the sentence that I will impose in this

5    case because I wouldn't go down as low as he wants it,

6    or really below the 420 months level in any event.

7         The way the guidelines work out in this case is

8    that Mr. Sebolt has a base level of 36.  The way we get

9    to that is, first we compute what his guidelines would

10   be without the cross reference.  And for that he would

11   get 22 points for the basic offense of advertising

12   child pornography.  Less two points off because there

13   was no intent to distribute.  Plus two percent because

14   it involved prepubescent children.  Plus five -- not

15   percent -- plus two points.  Plus five points because

16   there is a pattern of sexual abuse of minors.  And that

17   would total 27.  Twenty-seven points.

18        But, under the cross reference we go to 2G2.1,

19   which has a base offense level of 32 plus four points

20   because there was a minor under 12 involved in this

21   case, in the sexual offense.  So the adjusted offense

22   level is 36.  There is no acceptance of responsibility,

23   so the total offense level is 36.

24        He has a criminal history of nine points; which

25   consists of six points for prior offenses, two points

1    because he was under a prior sentence; and one point

2    because the prior conviction of a crime of violence did

3    not receive points.  And no one has objected to any of

4    that, I don't think.  So, with nine points he is a

5    category IV.  And a category IV leads to a guideline

6    sentencing range of 262 to 327 months.  Plus, as I

7    noted before, there is a mandatory minimum in this case

8    of 420 months.  So the guidelines are advisory only.

9        Let me inform the parties now about the documents

10   that I have received in this case besides the

11   presentence report.  The first is a series of medical

12   records from the Bureau of Prisons which contain, I

13   must say to Mr. Sebolt's credit, a number of requests

14   for help with what I think he essentially believes is

15   an addiction to sexual conduct involving minors.

16       And I commend you, Mr. Sebolt, for asking for

17   that.  And unfortunately, Mr. Sebolt has kind of fallen

18   victim to the bureaucracy which says that you can't

19   have sex offender treatment until you are close to your

20   release time.  And then while he is in prison, he is

21   stuck with this addiction and he winds up committing

22   additional crimes which in turn put off the time for

23   which he would be eligible for treatment.  So it is

24   kind of a Catch 22.

25       I also have received -- and this was -- these were

1    documents I received the first time around when we

2    sentenced him -- a letter from Mr. Sebolt himself

3    asking for help, which is entirely consistent with the

4    request that he made for treatment to the Bureau of

5    Prisons and sort of underlines it.  I received a letter

6    at that time from his mother, uncle, and grandfather

7    requesting that Mr. Sebolt be given treatment.  And a

8    letter, another, a second letter for this sentencing

9    from his mother and uncle requesting that we do

10   everything possible to get treatment for Mr. Sebolt.

11   And I am going to recommend that as part of a sentence.

12   I am going to recommend that they not wait until the

13   end of his sentence to do it, because I don't want him

14   to have to sit there forever with this obsession in his

15   mind that he can't do anything about.

16        I also received the various certificates that I

17   admitted into evidence a few minutes ago of things that

18   Mr. Sebolt has accomplished while he has been in

19   prison.

20        All right.  At this time I will hear the parties'

21   position.  The government in this case has moved for a

22   variance.  And I will hear the government on its motion

23   for an upward variance, the 3553(a) factors, and the

24   appropriate sentence in this case.

25        MR. JOHNSTONE:  Thank you, Your Honor.

1          While the technical calculation of the guidelines

2     in this case has changed, the underlying facts have

3     not.  A review of those facts, in light of the factors

4     listed in 18 United States Code section 3553(a), you

5     can come to only one conclusion.  The defendant is

6     simply too dangerous to ever be released from prison.

7     In its sentencing position the Government has outlined

8     a path for The Court to depart and vary upwardly, and

9     it hopes that The Court takes that path.

10          The criminal history category IV in the new

11    guidelines underrepresent the defendant's criminal

12    history and his risk for recidivism.  He did not

13    receive a full three points for his state, for his

14    second state molestation conviction simply because that

15    conviction, the sentence for that conviction was

16    imposed at the same time as his first state molestation

17    conviction.  Those two points alone would place the

18    defendant in criminal history category V.

19          In addition, the defendant can look to the

20    defendant's other conduct as an adult that went

21    uncharged.  For instance, the exchange of letters in

22    December of 2008 while the defendant was housed at FCI

23    Petersburg would be an example of the criminal conduct

24    that went uncharged.  The first was a letter from the

25    defendant to a woman in Srilanka, in which he was

1    requesting child pornography in exchange for money.

2    And the second was an in-coming letter from a woman in

3    Ethiopia in response to the defendant's request for

4    child pornography, thanking him for the money he had

5    sent, and enclosing a picture of a nude toddler.

6         In addition, The Court can look to the defendant's

7    behavior in his previous convictions in terms of

8    Illinois.  The type of behavior not charged, for

9    instance, the defendant in on-line chats and in his

10   letters before and after prison, boasted about

11   molesting numerous children, talking about tactics,

12   talking about different attempts he had made to do

13   that.  Even if the defendant was boasting, as he

14   suggests in his position, these comments have a great

15   impact on the type of people with whom the defendant is

16   communicating.  He is normalizing those behaviors for

17   these type of people with this predilection with sexual

18   interest in children.  And by doing so he increases the

19   likelihood they are going to offend against children.

20        Moreover, it is difficult to envision a set of

21   facts that falls further outside the heartland

22   contemplated by the Sentencing Commission in

23   establishing 2G2.1.  The defendant's universe of

24   victims numbers in the thousands he molested.  He has

25   molested put children.  He ran a file server for the

1    purpose of trafficking in child pornography and

2    victimized thousands of children in those images of

3    videos.  I believe file server had more than 27,000

4    images of child pornography in it.

5        THE COURT:  You are saying that each person caught

6    in one of the images is a victim of his offense by

7    distributing it, or by having it in his file server,

8    but you are not saying that --

9        MR. JOHNSTONE:  Absolutely.

10        THE COURT:  -- not saying that he was involved in

11    creating those images.

12        MR. JOHNSTONE:  No.  We have no evidence of that,

13    Your Honor, but just merely in trafficking in that

14    material he is victimizing that child, he is

15    contributing to the harm that child has suffered by

16    making it more difficult for the child to cope with the

17    actual abuse that happened.

18        THE COURT:  Well, that is pretty remote compared

19    to the people who actually create the stuff.  But go

20    ahead.

21        MR. JOHNSTONE:  Maybe so, Your Honor, but never

22    the less they are victims of the defendant's

23    trafficking in child pornography.  I don't think there

24    can be any question about that.

25        THE COURT:  Well, I think there is a question

1   about it, but it is okay.  What he did is bad enough

2   without having thousands of victims.

3        MR. JOHNSTONE:  And then, of course, Your Honor,

4   you have the children to which he exposed the risk of

5   production in his letters in exchange for money.  But

6   this conduct is made even more egregious by the fact

7   that he did it beyond, or behind the walls of a BOP

8   prison facility.

9        I would also point out, Your Honor, that the

10  defendant shows no remorse for his conduct.  None

11  whatsoever.

12       I haven't seen the medical records The Court was

13  referencing.  He may have made some --

14       THE COURT:  The first time around.

15       MR. JOHNSTONE:  Okay.  He may have made requests

16  for treatment, but I think his true intention can be

17  seen in the letters that he writes to private

18  individuals.  In those letters he makes it crystal

19  clear that he intends to continue this conduct no

20  matter what.  And he looks forward to doing so either

21  here or abroad if he is ever released from prison.

22       The defendant's criminal conduct places him in a

23  category all his own, far outside the heartland of the

24  sentencing commission was contemplating.

25       He has committed his adult life to preying on and

1   exploiting children.  And for that he deserves a

2   lifetime in prison.  And I would ask The Court to

3   impose that.

4        THE COURT:  Your argument would be the same

5   essentially for the variance, that even if I don't

6   depart I should vary upwards because of the heinous

7   nature of the crime and the danger he poses to others.

8        MR. JOHNSTONE:  Yes, Your Honor.

9        THE COURT:  All right.  Thank you.

10        MR. JOHNSTONE:  As outlined in my sentencing

11   position.

12        THE COURT:  Mr. Tyndall.

13        MR. TYNDALL:  Yes, sir.  Thank you.  Your Honor --

14        THE COURT:  With respect to the departure --

15        MR. TYNDALL:  I understand.

16        THE COURT:  -- I don't intend to depart upward.

17   You don't need to address that.

18        MR. TYNDALL:  Variance?

19        THE COURT:  The variance you need to address.

20        MR. TYNDALL:  Yes, sir, Judge.

21        This young man, who is now 33, was 21 when he went

22   to prison.  He has, as The Court has pointed out,

23   requested in writing and verbally in different

24   facilities for treatment at every stage.  Those

25   requests are not done to impress anyone, because he is

1    already in the Bureau of Prisons.  The government

2    mentions that while he continues his conduct behind the

3    walls of the prison, or Bureau of Prisons, I suggest

4    also to Your Honor we have a young man "obsessed" I

5    guess is the nicest word with these feelings, with the

6    obsession.  He is behind the walls of prison with no

7    life.  The obsession, I suggest to you, grows, and he

8    has nothing else in his life to focus on except for

9    these horrible images in his own mind.

10        He knows that.  He is asking for help.  So I think

11   that it is not an aggravating fact that it happened in

12   the Bureau of Prisons, but perhaps something that could

13   be mitigating because he has no other way except his

14   own self, and his thoughts.  He knows they are out of

15   control.  And he is trying to get help.  But let me

16   also suggest to you, Judge, that asking for this

17   treatment or help or therapy, or whatever it is, is a

18   high form of remorse.  It is a recognition of his

19   obsession and that something has to be done about it.

20   Nobody is coming to him and saying, maybe you should

21   get treatment.  You get treated.  He is doing that.  He

22   is the one who recognizes that it is out of control and

23   it needs to be reeled in.  I think that that is

24   extraordinarily important for The Court to consider.

25        Judge, I guess when we talk about variances we are

1   talking about the factors under 3553(a) for a great

2   part.  Obviously to reflect the seriousness of the

3   offense.

4        THE COURT:  Pretty serious.

5        MR. TYNDALL:  I can't address.  Can't address it

6   other than to say that, of course, it is an

7   extraordinarily serious offense.  I was considering the

8   other day if someone walked into someone's house and

9   kills someone, breaks in in the night and kills

10  someone, that the public may be more forgiving of that.

11  This is an offense that rubs us in a very emotional

12  way, for obvious reasons.  And I know The Court will,

13  and I ask for all of us, to try to look at these

14  factors without such emotion, even though our human

15  nature makes it so we can't help that.  That is also a

16  reason, Judge, that Congress, if you look at the

17  statutes, and Congress if you look at the sentencing

18  guidelines, have extraordinarily met the facts and

19  extraordinary high punishments for this.  I can't think

20  of anything else.  Again, you look at murder.  And this

21  is -- Congress has looked at it in depth and given you

22  extraordinarily harsh penalties for The Court to work

23  with.

24        So then we talk about deterrence of criminal

25  conduct.  Obviously, the gentleman has got 14 more

1    years to go on his earlier conviction.  And we are

2    looking at 420 months at 35 years.  He is looking at 83

3    years old, or 82 years old when he gets out, with no

4    variance.

5        Deterrence is also, frankly, treatment goes to

6    deterrence.  Frankly, there is an extraordinarily good

7    chance he could be civilly committed even if in the

8    80s.  There no question of his lifetime supervised

9    release.  There is no question there would be the sex

10   registry.  And that is if he is extraordinarily lucky

11   enough to get out of prison alive even with what The

12   Court has to point out, with the additional 35 years.

13       I think that the other systems of deterrence --

14   and this also brushes over into the protect the public

15   from further crimes, with supervised release, with

16   civil commitment, which I think there is an

17   extraordinarily good chance even after his penal,

18   Bureau of Prisons -- civil commitment is going to come

19   into play.  With the sex registry.  We have to have

20   some faith in our system that has set up these

21   harnesses and treatments, that they can be effective to

22   an 80-some-year-old man.  It is not the -- the only

23   bullet in your gun is not Bureau of Prisons.

24       The Congress, the government, has put other

25   factors in to protect the public and to deter further

1    criminal conduct.

2         I think that we also, obviously, have to look at

3    needed education, training, and treatment as one of the

4    factors under 3553(a).  I think that we have covered

5    that today.  Not only does he need the therapy and

6    treatment, Judge, he has been aggressive about seeking.

7    And, again, it is a very high form of remorse.  You

8    have the young man -- well, I don't want to get into

9    argument here on sentencing.  I don't know if you want

10   to complete it here, or just go over these factors

11   first on departure.

12        THE COURT:  We are not going to do a departure.

13   That motion --

14        MR. TYNDALL:  Or variance.

15        THE COURT:  Variance.

16        MR. TYNDALL:  But --

17        THE COURT:  I want you to talk about the variance

18   and what you think is the appropriate sentence.

19        MR. TYNDALL:  So I will.  I think, I have

20   addressed the variance already under those factors.

21        THE COURT:  They are pretty much the same factors

22   right now.

23        MR. TYNDALL:  Sir?

24        THE COURT:  Pretty much the same set of factors.

25        MR. TYNDALL:  It is.  It is.  So I just believe it

 1    is in place that a variance is not necessary.  Again,

 2    we have a gentleman who has been locked up since he was

 3    21 years old.  He has gotten no treatment.  None.

 4        We are, at the statutory minimum, we are -- it is

 5    an additional 35 years.  Again, he is going to be in

 6    his 80s if he survives.  There are things in place to

 7    take care of all of the factors in 3553(a) without

 8    additional years.  And I am struck by the no remorse

 9    situation.  You have a young man who is in his own way

10    fighting for his life.  I suggest to the Court there is

11    certain things he is afraid to say.  Because he is

12    desperately looking for a light at end of the tunnel

13    that may not exist.  And there are certain, I suggest,

14    things that he could and may even want to express that

15    he is fearful would hurt him down the road in finding

16    some way out of prison for the rest of his life.

17        I think when you see the other factors, that he is

18    not so fearful for, again, like asking for the

19    treatment, it infers remorse.

20        Judge, I just think that the punishment here, what

21    The Court has in its quill, satisfies all of the

22    factors of justice without a variance, Your Honor.

23        THE COURT:  Okay.  Thank you very much.

24        Mr. Sebolt, now is your chance to stand up and

25    tell me anything you want me to think about in imposing

1   sentence on you.  You may do it there, or you may come

2   up to the podium, whichever you prefer.

3        THE DEFENDANT:  I am going to decline.

4        THE COURT:  Okay.  Thank you.  You may then be

5   seated.

6        All right.

7        Let me go through the 3553(a) factors.

8        The nature and circumstances of the offense.

9   Well, while he was an inmate Mr. Sebolt attempted to

10  get other people to send him pornographic images of

11  small children.  He sent at least some of these

12  requests to people living in poverty in third world

13  countries, in Africa and Asia.  Offering just very

14  small payment to the parents of the children to get

15  their children to do things that would be damaging for

16  the rest of their lives, like performing oral sex or

17  having vaginal sex.

18       It is significant, I think, that he used a fellow

19  inmate to smuggle these, a bunch of letters out that

20  were going to go to people asking for more photographs.

21  You know, that other inmate, it endangered him, because

22  I can't believe that he didn't know what he was

23  carrying, and it just takes advantage of the goodwill

24  of someone he met in prison, whether that guy knew what

25  he was carrying out or not, what he was carrying out of

1    this facility.

2        All right.  As to history and characteristics of

3    the defendant.  His criminal history is that he has a

4    prior federal child porn conviction leading to a 30

5    year sent.  He has a state court child molestation

6    charge in which the sentence was concurrent with his

7    prior 30 year federal sentence.

8        On a personal level he comes from a pretty decent

9    home.  His father was not much in the picture, if at

10   all.  But he was raised by his mother, who seems like a

11   decent person, and certainly is a caring person as

12   evidenced by the two letters that she sent to me.  She

13   really thinks the world of Mr. Sebolt notwithstanding

14   everything that has happened.  And that is just what

15   you would want as a son, and you just what you would

16   want to see from any mother.

17       Apparently, throughout his younger years

18   Mr. Sebolt was very well behaved.  And so his current

19   adult conduct was a surprise to his family members.

20       Dependents.  He has none.  He has never been

21   married.  His physical condition is good.  Obviously he

22   has a mental health issue with pedophilia.  He does not

23   have a substance abuse problem that I can detect.

24   There is no history of that at all.

25       Educationally, as you can see from the documents

1    that he has filed with The Court, he is a very

2    articulate man, a very bright man.  He graduated from

3    high school and has some college courses that he has

4    taken.  He has got computer skills.  If I had to sum up

5    his character, essentially I would say that while he

6    recognizes that he needs treatment, Mr. Sebolt will

7    employ any means to satisfy his sexual desire for

8    children.  And going beyond the desire, what I have

9    never seen from Mr. Sebolt in my encounters with him is

10   any kind of empathy or any sense of understanding how

11   these actions hurt other people.  It is just not there

12   in him.  He has no empathy for the children, for their

13   parents, for other inmates.  The harm to other people

14   is just not on his -- doesn't register on his radar.

15   He has no concerns about the fact that he has

16   victimized impoverished people in less developed parts

17   of the world.  And he has vowed that he is going to try

18   to continue this conduct, or worse conduct.

19       The next factor that I am to consider under the

20   statute is the need for the sentence to reflect the

21   seriousness the offense, promote respect for the law,

22   and provide just punishment.  Well, obviously, the

23   offense is terribly serious.  It is just awful.

24       Respect for the law.  Mr. Sebolt has not shown any

25   of that in this case.  The fact that he did this in

1  prison is a slap in the face of the entire legal

2  system.

3      And provide just punishment.  Well, it is almost

4  impossible not to provide a very heavy punishment in

5  this case, because the minimum is 35 years.

6      The next factor that I am to consider is the need

7  for the sentence to afford adequate deterrence.  I

8  don't know how much it is going to deter Mr. Sebolt.

9  He is already in for 30 years when he did this.  But we

10  need to send a message to people on the outside that if

11  they do this our society is not going to tolerate this,

12  and there are severe consequences.  So I would say the

13  need to deter others is very, very important.

14      The next factor may be the most important factor

15  that I consider in this case, and that is the need for

16  the sentence to protect the public from further crimes

17  by Mr. Sebolt.  He is pretty ingenious in terms of

18  trying to commit crimes and trying to victimize kids

19  while he is in prison.  He is pretty persuasive in his

20  use of another inmate to smuggle his letters out.  And

21  he has expressed a desire to molest children when he is

22  not in prison.  And if there are inmates who are trying

23  to recover from this illness with which he suffers, or

24  of pedophilia, his actions in prison deter them.  This

25  is what he said in a letter that he wrote to a woman in

1    Illinois.  Kristine Secora.  And this is an exact

2    quote.  "Trust me, as a baby sitter I have touched,

3    licked, sucked, and photographed the genitals of many

4    little boys and girls as young as infants to as old as

5    12, usually five and under.  I have done it all, and

6    tasted some of the best young penis slash vagina I can

7    ever taste.  I miss it, and cannot wait until I can

8    have fun again.  But next time in another country that

9    is more accepting."

10        Can't say much more about the need to protect the

11   public from further crimes than what he said in that

12   sentence.

13        The next factor is the need to afford him

14   education, vocational training, medical care and other

15   treatment.  And I commend Mr. Sebolt on having tried to

16   do the best he can in terms of taking courses and

17   taking other -- trying to get treatment while he is in

18   jail.  And I will recommend that the Bureau of Prisons

19   provide him with treatment for pedophilia early in his

20   sentence and not at the very end.

21        I am to consider the kinds of sentences available.

22   His mandatory minimum is 420 months in prison.  And the

23   sentence can run up to life in this case.  He gets a

24   fine.  He can pay a fine of $250,000, but obviously he

25   has no assets.

1    I am to take into account the guidelines and the

2  statements and so forth which we talked about today.

3  And his guidelines numerically amount to a suggested

4  guideline of 262 to 320 months, which is trumped by the

5  mandatory minimum.

6    The next factor I am to consider is the need to

7  avoid sentencing disparities among similarly situated

8  defendants.  And as I noted earlier, everybody gets an

9  extraordinarily long sentence for the crime for which

10  he was convicted.

11    Thirty-five years by any stretch of the

12  imagination is a long sentence, and everybody -- there

13  just are not really significant disparities among

14  defendants convicted of this crime.

15    Restitution is a factor I am to consider, but it

16  doesn't seem applicable in this case.

17    There is a motion for a departure by the

18  government.  That is denied.

19    As I have already denied that and Mr. Sebolt's

20  request for a departure.  There is a motion for a

21  variance by the government.  Essentially the grounds

22  for that are the danger to others and the horrid nature

23  of the crime in this case.  I am going to grant that

24  variance and impose a sentence of life in this case

25  because of the factors that I just outlined above,

1    earlier.  Specifically, the danger to others.  And it

2    is just not safe to allow him to be on the streets.  I

3    mean, it is dangerous to have him behind jail, as is

4    observed in this case, or behind bars, rather, as we

5    have observed in this case.

6        And I would add that while I am discussing this

7    that any of the departures that I would have given to

8    Mr. Sebolt reducing the guideline sentence would not

9    have affected the sentence in this case.

10        I believe a sentence of life with credit for time

11    served -- well, credit for time served is pretty

12    irrelevant -- sentence of life is sufficient but does

13    not exceed the amount of time necessary to achieve the

14    goals of sentencing as set forth in 18 U.S. code

15    section 3553.  Specifically, a sentence of life will

16    reflect the seriousness of the offense, promote respect

17    for the law, provide just punishment for the offense,

18    afford adequate deterrence to criminal conduct, and

19    protect the public from further crimes Mr. Sebolt may

20    commit.  As such a sentence of life is punitive and

21    will serve to promote respect for the law, as well as

22    to punish and deter Mr. Sebolt, and to deter others.

23        Mr. Sebolt, please stand up.

24        Pursuant to the factors set forth in 18 U.S. code

25    section 3553(a), and the Sentencing Reform Act of 1984,

1    and having considered the Federal Sentencing Guidelines

2    as advisory, it is the judgment of The Court that you

3    are hereby committed to the custody of the U.S. Bureau

4    of Prisons to be imprisoned for a term of life.

5        I recommend that you participate in the Bureau of

6    Prisons program to treat sex offenders.  And I

7    recommend to the Bureau of Prisons that that happen as

8    close as possible to the beginning of your sentence

9    instead of at the end, so that whatever else happens

10   you are not tempted to do the kind of things that you

11   have done in this case.

12       If you are released from prison for any reason,

13   you will be placed on supervised release for a term of

14   life.  That means within 72 hours of your release you

15   have to report in person to the probation office in the

16   district to which you are released.  While on

17   supervised release you are not allowed to commit any

18   federal, state or local crimes.  You shall not

19   unlawfully possess a controlled substance, and shall

20   not possess a firearm or destructive device.  You will

21   comply with the standard conditions of supervised

22   release as recommended by the U.S. Sentencing

23   Commission.  You will participate in a program approved

24   by your probation officer for the treatment and

25   monitoring of sex offenders.  It may well be that you

1    won't need that because of any program you will get

2    while you are in prison.  But if the probation officer

3    thinks it needs to happen, your obligation is to do

4    that.  You will not be charged any of the costs of

5    that.  You will waive any right to patient

6    confidentiality.  And the probation officer will have

7    the right to see any treatment records that have been

8    created about you at any time.

9         You will not be required under any circumstances

10   to submit to a penile plethysmograph or ABLE assessment

11   of sexual interest without the probation officer coming

12   back and seeking permission to do that by The Court --

13   from The Court.

14        You will not have -- you will not -- on the

15   computer you will not access any pornographic materials

16   or pictures of nudity, nor get any magazines using

17   juvenile models in sexual poses.  This would -- this

18   ban on pornographic images from the computer would

19   include whatever device it is that replaces the

20   computer as technology moves forward.  So, you will not

21   through any means have access to any pornographic

22   material or pictures that displaying nudity.

23        You will obey -- you will comply with any sex

24   registration laws that are in effect upon your release.

25   Your probation officer will have the right to search

1    your person, your property, house, residence, vehicles,

2    your paper, computer, other electronic communication or

3    data storage devices or media at any time with or

4    without a warrant.  And that includes, would include

5    your probation officer and any other law enforcement

6    officer who has reasonable suspicion concerning any

7    unlawful conduct or violation of a condition of

8    supervision.

9         I will not impose a fine in this case.

10        You do have to pay a special assessment in the

11   amount of a hundred dollars if you have not already

12   done to.

13        There was a forfeiture in this case of some

14   equipment, and that forfeiture is made a part of the

15   sentence and will be included in the judgment.

16        You have 14 days to appeal this sentence to the

17   United States Court of Appeals for the Fourth Circuit.

18   If you want to do that you need to file a notice of

19   appeal.  If you ask Mr. Tyndall he will do that for

20   you.  If you can't reach Mr.Tyndall, send a letter to

21   the clerk of this court, to the District Court not the

22   Fourth Circuit Court of Appeals, and tell them you want

23   to appeal the decision in this case.  And they will get

24   the process rolling.  And you don't have to pay any

25   money to do that, Mr. Sebolt.

1          I know this is a difficult sentence for a person

2     your age, and I am sorry to have to impose it, but I

3     have to think of the welfare of others besides you.

4     And your risk to society is tough.  It is very a

5     difficult thing to deal with.  I hope -- as I said

6     earlier, you are very articulate and smart person.  I

7     hope that you can find a way while you are in prison to

8     use your intelligence and your education and your

9     skills to help others.

10         Mr. Johnstone, anything else you would like to

11    say?

12         MR. JOHNSTONE:  No, Your Honor.

13         THE COURT:  Anything else, Mr. Tyndall?

14         MR. TYNDALL:  No, sir.

15         THE COURT:  Mr. Tyndall, let me again thank you

16    for taking over a case in the middle.  And I guess you

17    did that, too, didn't you, Mr. Johnstone?

18         MR. JOHNSTONE:  No, sir.  I was here from the very

19    beginning.

20         THE COURT:  I thought Ms Wu had it.

21         MR. JOHNSTONE:  She was on it with me.

22         THE COURT:  Okay.

23         Well, thank you both for that.

24         Mr. Tyndall, thank you for a good job in a

25    difficult case.

1    Let's recess court.

2

3                    HEARING ADJOURNED

4

5

6            Certified true and correct transcript.

7

8                 Gilbert F. Halasz, RMR

9               Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25