IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| PHILIP MICHAEL SEBOLT, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | Criminal No. 3:12CR33-JAG |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent*. | ) | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255

COMES NOW, the United States of America, through its representatives, Dana J. Boente, United States Attorney for the Eastern District of Virginia, and Thomas K. Johnstone IV, Special Assistant United States Attorney, and files this response in opposition to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence.

## I.   PROCEDURAL BACKGROUND.

On March 6, 2012, a grand jury sitting in the Eastern District of Virginia returned an indictment charging Philip Sebolt with advertising child pornography, in violation of 18 U.S.C. § 2251(d)–(e).   On September 6, 2012, the United States filed a Notice and Memorandum regarding Rule 404(b) Evidence, which identified five pieces of evidence tending to show Sebolt created the advertisement described in the indictment.   Sebolt objected to the admission of the 404(b) evidence, but the Court overruled his objection.   Sebolt proceeded to a bench trial on September 13,

1

2012, at which his sole defense was that another inmate at FCI Petersburg was responsible for the creation of the advertisement.

At the conclusion of the trial, the Court found Sebolt guilty of advertising child pornography.   As a result of his conviction, and because he had already been convicted of two prior child exploitation offenses, Sebolt faced a statutory term of imprisonment of 35 years to life.   On January 28, 2013, the Court sentenced Sebolt to life imprisonment.

Sebolt appealed his conviction and sentence, asserting that the Court improperly admitted the 404(b) evidence and that his sentence was procedurally and substantively unreasonable.   On February 11, 2014, the Fourth Circuit affirmed Sebolt's conviction, but remanded his case for resentencing because an intervening decision from the U.S. Supreme Court would have affected Sebolt's sentencing guideline calculation.

At resentencing, Sebolt's sentencing guideline range was restricted to the statutory mandatory minimum of 420 months.   The United States, however, moved for an upward variance and requested a sentence of life imprisonment.   The Court granted the motion and sentenced the defendant to life imprisonment, primarily based on the severe nature of the offense, Sebolt's future dangerousness, and the need to protect the community.   Sebolt appealed the procedural and substantive reasonableness of his sentence to the Fourth Circuit, which affirmed the sentence on February 3, 2015. The Fourth Circuit issued its mandate with respect to the resentencing on February 25, 2015.   Doc. No. 84.

2

On September 21, 2015, Sebolt filed a motion with the Court requesting the appointment of counsel to assist him in preparing a Rule 33 motion for a new trial. Doc. No. 89.   The Court denied the motion, and Sebolt appealed the ruling to the Fourth Circuit.   Doc. No. 93.   On March 22, 2016, the Fourth Circuit affirmed the Court's denial of Sebolt's motion, and issued its mandate as to that decision on May 24, 2016.   Doc. Nos. 99, 104.

Sebolt now files a Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255.   Sebolt alleges ineffective assistance of counsel at his bench trial, at both of his sentencing hearings, and in both of his appeals.   He also asserts that his life sentence is disproportionate in violation of the Eighth Amendment. Finally, he asserts that the failure of the Bureau of Prisons to provide him mental health treatment renders his conviction and sentence unconstitutional under the Fifth and Eighth Amendments.

## II.    SEBOLT'S § 2255 MOTION IS TIME-BARRED

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a petitioner seeking habeas review to file his § 2255 motion within one year of the date on which his judgment of conviction becomes final.   *United States v. Dodson*, 291 F.3d 268, 270–71 (4th Cir. 2002) (citing the AEDPA, Pub. L. No. 104-132, 110 Stat. 1214).   The "judgment of conviction" includes both a conviction and its associated sentence, so in the case of a remand—as we have in Sebolt's case—the judgment of conviction cannot be final until both the conviction and its associated sentence are final.   *Id.* at 272.   In other words, Sebolt's judgment of

3

conviction became final until after the Fourth Circuit affirmed the Court's decisions at Sebolt's resentencing and issued its mandate.   *See id.* at 275–76.

Under *Dodson*'s ruling, Sebolt's judgment of conviction became final on February 25, 2015.   Therefore, under the AEDPA, he had to file his § 2255 motion before February 25, 2016.   He failed to do so, not filing the instant motion until October 11, 2016—19 months after his deadline under the AEDPA.

Moreover, Sebolt's motion on September 21, 2015, requesting the appointment of new counsel to assist him in preparing a Rule 33 motion for a new trial does not toll the one-year statute of limitations for his § 2255 motion.   In *United States v. Prescott*, the Fourth Circuit held that a pending Rule 33 motion did not toll the one-year limitations period for the purposes of § 2255.   *United States v Prescott*, 221 F.3d 686, 689 (4th Cir. 2000).   If a pending Rule 33 motion has no effect on the deadline to file a § 2255 motion, a motion for the appointment of counsel to assist in preparing a future Rule 33 motion certainly does not toll the clock.   Like Prescott, Sebolt failed to pay sufficient attention to the § 2255 limitations period and missed his filing deadline.   His § 2255 is untimely and must be dismissed.

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

### A.   STANDARD OF REVIEW

Assuming, *arguendo*, that Sebolt's § 2255 motion is not time-barred, he cannot meet the heavy burden required to prove his claims.   In order to establish ineffective assistance of counsel, Sebolt must demonstrate that counsel's performance was deficient and that the deficient performance actually affected the outcome of the case.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).   In order to show that his counsel's performance was deficient under the *Strickland* test, Sebolt must show that counsel's performance was unreasonable "under prevailing professional norms."   *Id.* Even if Sebolt is able to demonstrate that his counsel's performance was deficient, he must still establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.* at 694.   "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."   *Id.* at 691.

*Strickland* also cautions that "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission was unreasonable."   *Id.* at 689.   Therefore, defense counsel's performance and strategies are judged with the facts and knowledge "at the time of counsel's conduct."   *Id.* at 690.   "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   *Id.* at 689.

## B.    Ineffective Assistance of Counsel Claims

Assuming *, arguendo,* they are not time-barred, Sebolt makes numerous claims alleging ineffective assistance by his trial attorney, Valencia Roberts; his first appellate counsel, Fran Pratt; his counsel for resentencing, Mark Tyndall, and his

5

second appellate counsel, James Donnelly.   Contrary to Sebolt's claims, he was represented by competent counsel through a bench trial, two sentencing hearings, and two appeals.   Sebolt was convicted because he engaged in a 15-year campaign to exploit children.   The instant offense arose out of Sebolt soliciting women in foreign countries to produce child pornography with young children in exchange for American currency, all while he was serving a 35-year sentence at FCI Petersburg. Throughout the proceedings, Sebolt refused to accept responsibility for his actions, blamed others for his offenses, and, incredibly, expressed his intention to continue exploiting children upon his release from prison.

In light of these facts, Sebolt's counsel did everything they could to mitigate his offense and minimize his sentence.   Their representation more than satisfied the professional standards established for providing a criminal defense.   Even assuming, *arguendo*, counsel's performance was ineffective, Sebolt cannot show that any error affected the ultimate outcome in this case.   The result would have been the same, and Sebolt is simply second guessing his attorneys' performance because he is unhappy—unhappy with being caught, unhappy with being convicted, and unhappy with receiving a life sentence.   All of Sebolt's claims should be denied.

### 1.    Counsel's failure to present handwriting expert.

Sebolt claims that his counsel was ineffective because Ms. Roberts did not enlist a handwriting expert to pursue a full handwriting analysis and did not present that evidence at trial.   "To present a viable ineffective assistance of counsel claim based upon an alleged failure by counsel to call a witness to testify at trial, [a

6

defendant] must make an affirmative showing as to the identity and availability of the witness to testify, the details of what the uncalled witness would have testified to, and that the testimony of the uncalled witness would have produced a different, more favorable result at trial.   *Koe tjo v. Stovall,* 2006 WL 2365132, * 6 (E.D.Mich. Aug. 15, 2006); *Malcum v. Burt,* 276 F.Supp.2d 664, 679 (E.D.Mich.2003); *Dell v. Straub,* 194 F.Supp.2d 629, 650 (E.D.Mich.2002); *United States ex rel. Jones v. Chrans,* 187 F.Supp.2d 993, 1009 (N.D.Ill.), *aff'd,* 49 Fed. Appx. 623 (7th Cir.2002)." *Talley v. United States,* 2006 WL 3422997 (E.D. Tn. 2006).   In addition, "'the decision whether to call a defense witness is a strategic decision' demanding the assessment and balancing of perceived benefits against perceived risks, and one to which '[w]e must afford . . . enormous deference.'"   *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) (citing *United States v. Kozinski*, 16 F.3d 795, 813 (7th Cir. 1994)).

Sebolt fails to state whether his handwriting expert was available for trial. More importantly, Sebolt fails to state adequately what testimony his handwriting expert would have provided.   Sebolt merely states that his handwriting expert "reached a conclusion" without describing the nature of that conclusion and then says that, had the expert performed a full handwriting analysis, it would have proven Sebolt innocent. This is pure speculation with no evidence to support it in the record, and Sebolt has failed to state a claim.

Moreover, the United States presented lay testimony from two witnesses familiar with Sebolt's handwriting, who testified that Sebolt's handwriting appeared

on the outside of the envelopes containing the advertisement.   Trial Tr. 56, 96–97.

The United States also presented expert handwriting testimony from Lisa

Stadmeyer, who testified that it was highly probable that one writer authored the

original exhibits introduced by the government and that the same writer authored

the machine-printed exhibits introduced by the government, namely the

advertisement.   Trial Tr. 173.   Finally, the United States presented evidence that

the original copies of the images depicted on the flyer were recovered from Sebolt's

cell, hidden in a book with Sebolt's name written on the side.   Trial Tr. 105–08.

Sebolt offers no credible evidence to show that his expert conducting a full

handwriting analysis would refute this evidence so as to change the result of his trial.

*Strickland,* 466 U.S. at 694.   Thus, his claim should be denied.

### 2.   Counsel failed to obtain personnel records of government witnesses.

Sebolt claims that Ms. Roberts failed to obtain personnel records for the five

government employees the United States called as witnesses, speculating that these

records "may" contain information that could be used to impeach these witnesses.

Sebolt provides broad categories of records that could exist, but he makes no factual

allegations that such records actually exists.   Instead, he assumes these records

exist and that, had they been used at trial to impeach the government's witnesses, he

would have been acquitted.   "A habeas petitioner 'is expected to state facts that

point to a real possibility of constitutional error.'"   *United States v. Dyess*, 730 F.3d

354, 359 (4th Cir. 2013).   Sebolt has failed to do that here, and his claim should be

denied.  *See United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980) (dismissing claim based on allegations of prosecutorial misconduct because allegations are "conclusory and wholly unsubstantiated").

### 3.   Counsel failed to object to 404(b) evidence and lay opinion testimony.

Sebolt alleges that Ms. Roberts failed to object to the admission of evidence under Rule 404(b) and lay opinion testimony related to handwriting.   Sebolt alleges that Ms. Roberts failed to object to the admission of the evidence.   This claim is factually inaccurate and without merit because the record reflects that Ms. Roberts did object to the admission of this evidence.   Trial Tr. 22–25.   Ms. Roberts objected to the admission of the evidence on the grounds that they were not probative to Sebolt's knowledge, that they did not constitute prior bad acts, and that they were unreliable because they were not found in Sebolt's possession.   *Id.*   The Court overruled Ms. Roberts's objection, and, after Sebolt's conviction, Ms. Roberts and Ms. Pratt appealed the admission of the 404(b) evidence to the Fourth Circuit.   In its opinion dated February 11, 2014, the Fourth Circuit provided an extensive analysis supporting the Court's admission of the 404(b) evidence.   Despite Sebolt's claims, Ms. Roberts made several attempts to exclude the 404(b) evidence, and this claim is without merit.   *See Jackson v. United States*, 495 F.2d 349, 351 (8th Cir. 1974) ("[A] matter that has been decided adversely to a defendant on appeal cannot be litigated in a § 2255 motion.").

Likewise, Sebolt's claim that Ms. Roberts was ineffective for failing to object to

the admission of lay testimony regarding Sebolt's handwriting should be denied. Lay witnesses properly testified that the handwriting on the advertisement and other government exhibits resembled Sebolt's handwriting.   *United States v. Garth*, 540 F.3d 766 (8th Cir. 2008) (finding that investigator's testimony that signatures on tax returns appeared to be similar was admissible because it did not require any specialized, scientific, or technical analysis).   These witnesses—Heather McWilliams and Scott Bernardo—were responsible for inspecting inmates' incoming and outgoing mail, and, because Sebolt was an inmate who required special monitoring, they became familiar with his handwriting.   Trial Tr. 38, 96–97. Sebolt was a prolific writer, sending out five to ten letters per week.   Trial Tr. 97. Ms. McWilliams and Mr. Bernardo clearly had a basis for determining whether Sebolt's handwriting resembled the handwriting on the advertisement, and any objection to the admission of that evidence would have been meritless.   "An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."   *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).   As such, Sebolt's claim should be denied.

### 4.   Counsel failed to present exculpatory and impeachable evidence in a Rule 33 post-trial motion.

Sebolt claims that Ms. Roberts and Mr. Tyndall were ineffective because they failed to make a Rule 33 post-trial motion to present forensic evidence to establish Sebolt's innocence and impeachment evidence to discredit the government's

witnesses.   This claim is essentially repeating the assertions in Claims 1 and 2, and, for the same reasons, it should be denied.   Sebolt simply makes conclusory allegations that some unknown forensic expert opinions and unidentified personnel records would have been changed the result of this case.   His claims are totally unsubstantiated and should be denied.   *See United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980) (dismissing claim based on allegations of prosecutorial misconduct because allegations are "conclusory and wholly unsubstantiated").

> **5.      Counsel was ineffective for failing to object to the admission into evidence of Sebolt's letter to another inmate.**

Sebolt claims that Ms. Roberts and Mr. Tyndall were ineffective because they failed to object to the admission into evidence of a letter Sebolt wrote to a female sex offender in Illinois.   Contrary to Sebolt's claim, Ms. Roberts objected to the admission of this letter on the grounds that it was unreliable.   Indeed, Ms. Roberts attempted to establish through cross-examination that the government could not prove that Sebolt was the author of the letter.

At Sebolt's first sentencing on June 12, 2013, the government introduced a letter Sebolt had written to an inmate in an Illinois prison in between his trial and sentencing.   Ms. Roberts objected to the introduction of that letter into evidence, asserting that it was unreliable.   Doc. 35 at 2; Trial Tr. 11–12.   In response, the United States presented testimony from Investigator Jose Negron from FCI Petersburg.   Mr. Negron testified that he received an email from a prison official at FCI Waseca in Minnesota.   Trial Tr. 14.   The email had an attachment containing

another email from a detective in Illinois.   Trial Tr. 15.   The detective's email contained a six-page, handwritten letter.   *Id.*   The letter discusses Sebolt's sexual interest in toddlers and children and states that he wants to share these interests with a like-minded female.   Trial Tr. 17.   The letter is signed "Phil."   *Id.*

Mr. Negron testified that he was one of the people responsible for reviewing Sebolt's mail while he was housed at FCI Petersburg.   Trial Tr. 17.   From that experience, Mr. Negron testified that he recognized the handwriting in the letter as Sebolt's handwriting.   Trial Tr. 18.   Ms. Roberts cross-examined Mr. Negron on his opinion that Sebolt wrote the letter.   Ms. Roberts pointed out that Mr. Negron had not seen Sebolt's handwriting for more than one year and that he was comparing this letter to a letter Sebolt wrote in or about 2010.   Trial Tr. 19–22.   The Court overruled Sebolt's objection and admitted the letter into evidence.   Trial Tr. 23.

Given the record, it can hardly be said that Ms. Roberts failed to object the admission of Sebolt's handwritten letter into evidence.   She objected to its admission, forced the government to produce evidence of its reliability, and challenged Mr. Negron's ability to opine that Sebolt had written the letter.   She effectively represented Sebolt's interests at sentencing, and Sebolt's claim should be denied.

**6.   Counsel failed to object to enhanced statutory punishments in 18 U.S.C. § 2251(e).**

Sebolt claims that Ms. Roberts and Mr. Tyndall were ineffective because they failed to object to the application of the enhanced statutory punishments in 18 U.S.C.

12

§ 2251(e).   Generally, section 2251(e) provides that an individual convicted under § 2251 faces 15 to 30 years' imprisonment.   However, if a defendant has prior predicate convictions, the statute increases his range of punishment.   18 U.S.C. § 2251(e).   Specifically, "if such person has 2 or more prior convictions under this chapter . . . or under the laws of any State relating to the sexual exploitation of children, such person shall be fined under this title and imprisoned not less than 35 years nor more than life."   *Id.*

Sebolt's criminal history included federal convictions for advertising, transporting, and possessing child pornography in 2004 and two Illinois state convictions for predatory criminal sexual assault of a child in 2005.   PSR, at 11–16. Sebolt claims that the phrase "sexual exploitation of children" refers only to offenses involving the production of child pornography.   Numerous courts, however, have found that the phrase "sexual exploitation of children" sweeps more broadly than production of child pornography.   *See United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006) (finding that defendant's prior convictions for performing a lewd act in front of a minor under state law relate to the "sexual exploitation of children"); *United States v. Smith*, 367 F.3d 748, 751 (8th Cir. 2004) (rejecting defendant's argument trying to limit "sexual exploitation of children" to conduct involving production of child pornography and holding that defendant's prior conviction of first-degree sexual abuse under Arkansas law related to the sexual exploitation of children); *United States v. Randolph*, 364 F.3d 118, 122 (3d Cir. 2004) (finding that defendant's state convictions for child molestation under Georgia law properly

13

supported an increase in defendant's sentencing range).

Any objection to the increased range of statutory punishment would have been meritless.   "An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."   *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).   As such, Sebolt's claim on this point should be denied.

> **7.   Counsel failed to argue against a disparate sentence and raise an Eighth Amendment challenge for disproportionality.**

Sebolt claims that Ms. Roberts and Mr. Tyndall failed to argue against the Court imposing a disparate sentence for Sebolt when compared to similarly situated defendants.   Sebolt claims, without specific factual support, that other defendants with worse records have received lesser sentences than life, and, as such, his sentence is disproportionate.   The record, however, shows that Ms. Roberts made that specific argument.   In addition to her other arguments for the Court to sentence Sebolt to the mandatory minimum of 420 months, Ms. Roberts specifically argued that a higher sentence would result in Sebolt receiving a harsher sentence than defendants who engaged in more severe conduct.   First Sentencing Tr. 40.   Ms. Roberts told the Court that she had identified other defendants who had molested more victims or committed more egregious acts than Sebolt who had received lesser punishment.   First Sentencing Tr. 39–40.   The Court considered that argument and rejected it.   First Sentencing Tr. 46.

14

On resentencing, Mr. Tyndall did not re-raise the argument against disparate sentences.   In light of the Court's prior decision, Mr. Tyndall chose to instead argue that the mandatory minimum of 420 months was sufficient to satisfy all of the statutory sentencing factors.   Second Sentencing Tr. 20–25.   Given the Court's consideration and rejection of the disparate sentence argument, Mr. Tyndall's decision was perfectly reasonable and certainly does not fall below the standard of professional norms.   Even assuming Mr. Tyndall's decision constitutes ineffective assistance of counsel, it would not have changed the outcome because the Court addressed the need to avoid sentencing disparities in its §3553(a) analysis at Sebolt's resentencing.   Resentencing Tr 31.   Sebolt's claim should be denied.   *Cf. Coleman v. United States*, 318 F.3d 754, 759 (7th Cir. 2003) (finding defense counsel's attempt to minimize defendant's sentence through a plea agreement reasonable).

Likewise, Sebolt's claim that counsel was ineffective for failing to challenge both the statutory sentencing scheme imposed by Congress, as well as his life sentence, as unconstitutional in violation of the Eighth Amendment.   Sebolt asserts that Mr. Tyndall failed to raise an Eighth Amendment claim at resentencing. Sebolt states, without alleging any specific facts, that the severity of his crime "is substantially less in comparison to the typical offender whom lurks on the Internet reaching out to hundreds of other child pornographers to trade child pornography . . . or [who] prays [sic] on upon children."   He also asserts that his offense "pales in comparison to those who produce child pornography or engage in sexually explicit conduct with minors."   These allegations amount to nothing more than conclusory

assertions.   Sebolt provides no factual allegations identifying these "typical offenders" or the sentences they received, and, as such, he has failed to state a proper claim on this point.

Moreover, any constitutional challenge to Sebolt's sentence or the statutory scheme in 18 U.S.C. § 2251 would have been meritless.   The Eighth Amendment prohibits "cruel and unusual punishment," but contains only a "narrow proportionality principle that applies to noncapital sentences." *United States v. Johnson*, 451 F.3d 1239, 1242 (11th Cir. 2006).   Outside of the capital context, successful challenges to a sentence's proportionality are "exceedingly rare." *United States v. Weis*, 487 F.3d 1148, 1153 (8th Cir. 2007).   Courts must afford Congress wide latitude to develop the elements and punishment for specific offenses because it, and not the judiciary, has the "authority to determine the types and limits of punishments for crimes." *Johnson*, 451 F.3d at 1243.   As such, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment.   *Id.*

More specifically, the statutory punishment range established by Congress in 18 U.S.C. § 2251 has been upheld as constitutional under the Eighth Amendment. Advertising of child pornography constitutes a significant crime because it "threatens to cause grave harm to society" by encouraging others to produce and distribute material depicting the sexual abuse of children.   *See United States v. Meiners*, 485 F.3d 1211, 1213 (9th Cir. 2007).   This is particularly true when an offender, such as Sebolt, has a long, continuous history of exploiting children.   *See*

16

*United States v. Paton*, 535 F.3d 829, 837–38 (8th Cir. 2007) ("It is reasonable for Congress to authorize harsher punishments for individuals 'who have already been convicted of sexually abusing a minor yet will not or cannot comport their conduct to the dictates of the law.'").   Thus, contrary to Sebolt's assertion, the statutory punishment established by Congress does not present the "rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."   *Id.* (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991)).

As such, any challenge to the graduated sentencing scheme established by Congress or Sebolt's specific sentence would have been meritless.   "An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."   *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).   In light of Sebolt's extensive criminal history of exploiting children, his continuation of that behavior behind the walls of a federal prison, and his stated intention to continue engaging in that behavior upon his release, Sebolt clearly deserved the sentence he received.   The Court rightly observed that he is too dangerous to ever be released from prison, and his claim of ineffective assistance of counsel related to an Eighth Amendment challenge should be denied.

17

### 8. Appellate counsel was ineffective for failing to appeal the Court's admission of evidence under Rule 404(b).

Sebolt claims that his appellate counsel on his first appeal was ineffective because they failed to appeal the Court's admission of evidence under Rule 404(b). As noted above, however, Sebolt's appellate counsel did appeal the Court's decision to admit the evidence under Rule 404(b) to the Fourth Circuit.   In an opinion dated February 11, 2014, the Fourth Circuit affirmed the Court's decision to admit the evidence and upheld Sebolt's conviction.   As such, Sebolt cannot raise this claim in his § 2255 motion, and his claim should be denied.   *See Jackson v. United States*, 495 F.2d 349, 351 (8th Cir. 1974) ("[A] matter that has been decided adversely to a defendant on appeal cannot be litigated in a § 2255 motion.").

### 9. Appellate counsel was ineffective for failing to appeal the Court's guideline analysis and to challenge the proportionality of Sebolt's sentence under the Eighth Amendment.

Sebolt claims that Mr. Donnelly was ineffective because he failed to raise and argue several issues in Sebolt's second appeal, specifically that he did not argue that the Court improperly relied on one sentencing factor, that the Court failed to avoid sentencing disparities, and that Sebolt's sentence was disproportionate in violation of the Eighth Amendment.   "In applying the *Strickland* standard to claims of ineffective assistance of appellate counsel, the Fourth Circuit affords appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal.'"   *Abu-Ali v. United States*, 2013 WL 5797855 (E.D. Va. 2013) (citing *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1980)).   Mr. Donnelly

appealed to the Fourth Circuit on Sebolt's behalf, asserting that the Court failed to properly consider a downward departure and that Sebolt's life sentence was substantively unreasonable.   The Fourth Circuit denied that appeal.

With respect to the Court's analysis of the §3553(a) sentencing factors, Sebolt claims that the Court improperly relied on one sentencing factor.   The record, however, shows that the Court provided an extensive analysis of all the sentencing factors listed in § 3553(a).   Resentencing Tr. 26–32.   The Court stated that a sentence of life imprisonment reflected the seriousness of the offense, would promote respect for the law, provide just punishment, afford adequate deterrence, and protect the community from Sebolt's future crimes.   Resentencing Tr. 32.   Contrary to Sebolt's assertions, the Court relied on several sentencing factors in fashioning its sentence.

Moreover, the Fourth Circuit addressed this claim on Sebolt's second appeal and affirmed the Court's decision.   In its opinion dated February 3, 2015, the Fourth Circuit stated, "The fact that the court strongly emphasized Sebolt's future dangerousness and the need to protect the community as a sentencing factor does not render the sentence unreasonable."   This claim was resolved on direct appeal and cannot serve as a basis for Sebolt's § 2255 motion.   *See Jackson*, 495 F.2d at 351 ("[A] matter that has been decided adversely to a defendant on appeal cannot be litigated in a § 2255 motion.").

Sebolt's other claims with respect to Mr. Donnelly are essentially the same claims of ineffectiveness he makes with respect to trial counsel.   As noted above, the

Court adequately considered the need to avoid sentencing disparities.   Sentencing Tr. 46; Resentencing Tr. 31.   An Eighth Amendment challenge to the statutory punishments established by Congress of Sebolt's specific sentence would have been meritless.   Thus, this claim should be denied.

## IV.   Eighth Amendment Challenges

Assuming, *arguendo*, that they are not time-barred, Sebolt makes independent claims challenging the constitutionality of his sentence, as well as the constitutionality of the statutory scheme of punishment established by Congress in 18 U.S.C. § 2251.   As an initial matter, Sebolt has procedurally defaulted these claims because he failed to raise them on direct appeal.   *See Mixen v. United States*, 469 F.2d 45, 46 (8th Cir. 1972) (holding that matters which could have been raised on direct appeal will not be considered in § 2255 proceedings).   Moreover, as discussed above, Sebolt's Eighth Amendment claims are meritless.

For fifteen years, Sebolt was engaged in a relentless campaign focused solely on preying on, gaining access to, and exploiting children at home and abroad.   He was a purveyor of a massive quantity of child pornography.   He used his substantial collection of child pornography to attract other child pornographers and molesters to him so he could gain information from them on how to better molest children. Sebolt developed new methods and schemes to gain access to children, tested them on actual children in public, and refined his techniques.   The skills he developed were successful on at least three children who he molested on numerous occasions between 1997 and his arrest in 2002.

Not even the loss of his liberty, however, was enough to deter Sebolt from his unyielding goal of exploiting more children to satisfy his own sexual desires.   While in the custody of the BOP—first at USP McCreary and then at FCI Petersburg—Sebolt persistently sought nude pictures of children through the U.S. mail.   At FCI Petersburg, he repeatedly solicited the production of child pornography by the women with whom he corresponded.   Sebolt played on the vulnerabilities of these women, exploiting their indigence and enticing them with money.   He coached and encouraged them to abuse children to whom they had access in a certain way so the resulting photographs would be customized to his personal sexual preferences.   He even provided the intended recipients of his correspondence with detailed, hand-drawn sketches of children's genitalia, so there was no question about the type of photographs he was seeking.   In exchange, he would pay them a pre-determined fee for each photograph depending on the type of abuse depicted—the more severe the abuse, the higher the price.

Once convicted, Sebolt nevertheless failed to accept responsibility for his actions and showed no remorse for his criminal conduct.   Instead, he wrote to a female sex offender in an Illinois prison and expressed his desire to continue exploiting children upon his release.   He also blamed his criminal conduct on the BOP for failing to provide him with mental health treatment.

Given the severity of Sebolt's criminal conduct, his criminal history, his stated intention to continue exploiting children, and his lack of remorse, the Court's sentence of life imprisonment was reasonable.   His sentence certainly does not

present the "rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *United States v. Paton*, 535 F.3d 829, 837–38 (8th Cir. 2007).   Sebolt's sentence was constitutional.

Moreover, the statutory punishment established by Congress for repeat sex offenders passes constitutional muster.   Advertising of child pornography constitutes a significant crime because it "threatens to cause grave harm to society" by encouraging others to produce and distribute material depicting the sexual abuse of children.   *See United States v. Meiners*, 485 F.3d 1211, 1213 (9th Cir. 2007).   This is particularly true when an offender, such as Sebolt, has a long, continuous history of exploiting children.   *See United States v. Paton*, 535 F.3d 829, 837–38 (8th Cir. 2007) ("It is reasonable for Congress to authorize harsher punishments for individuals 'who have already been convicted of sexually abusing a minor yet will not or cannot comport their conduct to the dictates of the law.'").   Sebolt has failed to state any ground on which this Court could find that his Eighth Amendment rights were violated, and his § 2255 motion should be denied.

## V.   Claim against the Bureau of Prisons

Assuming it is not time-barred, Sebolt claims the Bureau of Prisons ("BOP") failed to provide him mental health treatment, which caused him to commit the instant offense, thus rendering his conviction and sentence unconstitutional.   As an initial matter, the BOP has broad discretion to administer a prisoner's sentence. *Klawonn v. United States*, 11 Fed App'x 559, 561 (6th Cir. 2001).   Decisions to place

a prisoner within a particular program or a particular facility are decisions within the sole discretion of the BOP.   *Id.* (citing *Thye v. United States*, 109 F.3d 127, 130 (2d Cir. 1997).

The BOP transferred Sebolt to FCI Petersburg in 2007.   FCI Petersburg is the facility that houses the BOP's sex offender treatment program for the mid-Atlantic region. Federal Bureau of Prisons,

https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp.   Sebolt committed the instant offense in early 2010.   While he alleges that he requested sex offender treatment while housed at USP McCreary from 2006 to 2007, Sebolt fails to allege that he requested sex offender treatment at FCI Petersburg, or that such request was denied.   As such, he has failed to state a plausible claim that the denial of his request for sex offender treatment somehow led to his commission of the instant offense, and his claim should be denied.

Furthermore, Sebolt knew that he had not received the mental health treatment he had requested at the time of his bench trial, but he failed to present it as a defense.   During his allocution at his first sentencing, Sebolt told the Court he had not received treatment.   Sentencing Tr. 41–42.   The Court considered those statements and noted that Sebolt, while complaining about not receiving treatment, refused to apologize for any of his conduct or for any of the harm he had caused. Sentencing Tr. 47.   Sebolt knew he had not received mental health treatment at the time of his first appeal, but he did not raise the issue.   Nor did he raise it on his second appeal.

23

Sebolt has procedurally defaulted his claims about mental health treatment. *See Mixen v. United States*, 469 F.2d 45, 46 (8th Cir. 1972) (holding that matters which could have been raised on direct appeal will not be considered in § 2255 proceedings).   "Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'"   *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)).   Sebolt did not raise this issue on either of his direct appeals.   Thus, he waived his claim and cannot bring it on collateral review.   As such, the claim should be dismissed.

## VI.    CONCLUSION

The petitioner does not state any ground on which this Court could find that he was denied his constitutional right of effective assistance of counsel or that his Fifth or Eighth Amendment rights were violated.   Therefore, the petitioner's Motion under 28 U.S.C. § 2255 should be dismissed.

Respectfully submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY

By:_____/s/_____
Thomas K. Johnstone IV
Special Assistant United States Attorney
202 N. 9th St.
Richmond, VA 23219
(804) 786-2701 (Telephone)
(804) 371-0151 (Facsimile)
tjohnstone@oag.state.va.us

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2016, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, and mailed a paper copy of the

pleading to:

Philip M. Sebolt
Inmate # 14682-424
FCI Terra Haute
P.O. Box 33
Terra Haute, IN 47808


                                                   /s/
                                          Thomas K. Johnstone IV
                                          Special Assistant United States Attorney
                                          202 N. 9th St.
                                          Richmond, VA 23219
                                          (804) 786-2701 (Telephone)
                                          (804) 371-0151 (Facsimile)
                                          tjohnstone@oag.state.va.us