IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



UNITED STATES OF AMERICA

v.                                                          Criminal No. 3:12CR33

PHILIP MICHAEL SEBOLT,

        Petitioner.

## MEMORANDUM OPINION

Philip Michael Sebolt, a federal inmate proceeding *pro se*, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 105). In his § 2255 Motion, Sebolt raises the following claims for relief:

Claim 1    (a)    Sebolt failed to receive the effective assistance of counsel because:
                   (1)    counsel failed to discover and introduce exculpatory forensic evidence proving Petitioner's innocence (§ 2255 Mot. 4–8);
                   (2)    counsel failed to obtain the personnel records for the Government witnesses employed by the Bureau of Prisons, which may have contained information valuable for impeaching these witnesses (*id.* at 8–9);
         (b)    (1)    counsel failed to raise a proper objection to five pieces of evidence that the Government introduced under Fed. R. Evid. 404(b) (*id.* at 10–13); and,
                   (2)    counsel failed to object to lay opinion testimony. (*Id.* at 13–14.)
         (c)    Counsel was ineffective for failing to move for a new trial based on the evidence described in Claims 1(a) and 1(b) above. (*Id.* at 14.)
         (d)    At resentencing, counsel failed to object to the unproven facts in ¶ 14 of the Presentence Investigation Report ("PSR"). (*Id.* at 16–19).
         (e)    Counsel failed to object to the improper enhancement of Sebolt's sentence under 18 U.S.C. § 2251(e). (*Id.* at 19–21.)
         (f)    At resentencing, counsel failed:
                   (1)    to encourage the Court to impose a sentence that would avoid unwarranted sentencing disparities (*id.* at 22–24);
                   (2)    to object that a life sentence would violate the Eighth Amendment (*id.* at 24–27); and,

|  |  |  |
|---|---|---|
|  | (3) | to object to "the production-like sentencing scheme in § 2251(e) . . . ." (*Id.* at 27 (capitalization corrected) (emphasis omitted)). |
|  | (g) | Appellate counsel failed to argue that "the December 2008 letter sent from Roda Tekeste to Sebolt with enclosures was not an act committed by Sebolt and therefore inadmissible under Rule 404(b) . . . ." (*Id.* at 30.) |
|  | (h) | Appellate counsel failed to raise the issues listed in Claim 1(f). (*Id.* at 31–35.) |
| Claim 2 |  | Sebolt's life sentence violates the Eighth Amendment. (*Id.* at 36.) |
| Claim 3 |  | "The production-like sentencing scheme in § 2551(e) . . . violat[es] the Eighth Amendment." (*Id.* at 39 (capitalization corrected) (emphasis omitted).) |
| Claim 4 |  | "The failure of the Federal Bureau of Prisons to provide mental health treatment for Sebolt[] . . . while in its custody and care . . ." violates the Fifth Amendment, the Eighth Amendment, and 18 U.S.C. § 4042(a)(2). (*Id.* at 42 (capitalization corrected) (emphasis omitted).) |

The Government has responded arguing, *inter alia*, that Claims 2 through 4 are procedurally defaulted and Sebolt's ineffective assistance of counsel claims lack merit. (ECF No. 110.) Sebolt filed a reply. (ECF No. 112.) As explained below, Sebolt's claims are largely redundant variations of claims raised at trial and on direct appeal, and are patently lacking in merit. Given the nature of these claims, the Court recites rather exhaustively from the opinion of the United States Court of Appeals for the Fourth Circuit.

### I. Pertinent Procedural History with Respect to Sebolt's Conviction

After a bench trial, Sebolt was convicted of advertising child pornography, in violation of 18 U.S.C. § 2251(d). *United States v. Sebolt*, 554 F. App'x 200, 201–02 (4th Cir. 2014). The Court sentenced Sebolt to life in prison. *Id.* at 202. Sebolt appealed. *Id.* The United States Court of Appeals for the Fourth Circuit affirmed Sebolt's conviction, vacated his sentence, and remanded for resentencing. *Id.*

The Fourth Circuit aptly summarized the circumstances surrounding Sebolt's trial and conviction as follows:

In March of 2012, Sebolt was charged with, between January 1, 2010 and February 19, 2010, creating a "notice or advertisement" seeking to purchase child pornography, in violation of 18 U.S.C. § 2251(d).[1] At the time of the charged conduct, Sebolt was an inmate at F.C.I. Petersburg serving a sentence for child pornography offenses.

The document at the heart of the prosecution[2] is a handwritten flyer seeking, in graphic terms, pictures of nude, prepubescent children posing in various positions. The flyer offers various sums of money for the pictures depending on the pose or sexual act depicted. The reverse side of the flyer includes photographs of nude children as well as graphic drawings of the type of photos the author is seeking.

Prison officials discovered the flyer in a box of materials in the possession of another inmate at F.C.I. Petersburg, Randall Russell Bland. The box was searched in February 2010 as Bland was set to be released from prison following completion of his sentence for distribution of child pornography. The box contained several dozen copies of the flyer in envelopes that had been addressed to various individuals in foreign countries. In particular, two of the envelopes were addressed to Buddhika Jinadari and Roda Tekeste, women living in Sri Lanka and Ethiopia, respectively. The government contended that Sebolt gave Bland the flyers for Bland to deposit in the mail once he was out of prison. The flyer instructs recipients to mail the requested photographs to "Phil c/o Russell Cain" at a mail route box address in Salem, West Virginia. At trial, Bland testified that Russell Cain is his given name, and that the address belonged to an aunt of his.

Prior to Sebolt's trial, the government submitted notice of its intent to introduce evidence pursuant to Rule 404(b). Specifically, the government planned to introduce five letters sent to or from Sebolt while in prison. The documents were discovered by prison officials monitoring Sebolt's mail.

The first two exhibits were 2006 and 2007 handwritten requests to book publishers seeking information on two books: "Children: A Picture Archive of Permission–Free Illustrations" and "Children Are Children: Photographs from Nine Countries." The requests, which were signed by Sebolt and included his Federal Bureau of Prisons register number ("BOP number"),[3] asked whether the books contained photos or illustrations.

The third document was a 2007 letter signed by Sebolt and addressed to an individual named Candy Brown. The letter offered Ms. Brown twenty dollars in exchange for explicit photos of young women. The letter also contained detailed

---

[1] Sebolt had previously been convicted of two or more offenses relating to the sexual exploitation of children, subjecting him to a 35–year mandatory minimum term of imprisonment. 18 U.S.C. § 2251(e).

[2] As discussed further below, the government contends that several of the challenged exhibits are intrinsic to the charged offense and that the flyer was therefore not the sole basis for the prosecution.

[3] At oral argument, Sebolt conceded that he is the author or intended recipient of each of the five challenged exhibits.

3

instructions for creating a compartment on the inside of store bought greeting cards in which the photos could be hidden and mailed into the prison undetected.

The fourth document was a December 2008 Christmas card from Sebolt to Ms. Jinadari in Sri Lanka. The card contained a hidden compartment like the one described in the letter to Ms. Brown. Inside the compartment was a letter from Sebolt discussing his "photo collecting hobby" and offering to send Ms. Jinadari money in exchange for photographs. The letter did not discuss the type of photographs requested, but it noted the need for secrecy and instructed Ms. Jinadari to send the photos in a similar hidden compartment.

The fifth and final challenged document was a December 2008 greeting card sent to the defendant by Ms. Tekeste in Ethiopia. Inside the card was a hidden compartment containing a photograph of a nude female toddler in a sexually suggestive pose. Along with the photograph was a letter from Ms. Tekeste to Sebolt thanking him for money he had previously sent her and indicating that the photo was provided in response to Sebolt's request for help with his "hobby."[4]

Sebolt filed a motion in limine seeking to exclude the five proposed exhibits as improper character evidence. His argument in support of the motion made clear that his primary defense in the case would be that someone else—likely Bland—authored the flyer in question. Sebolt argued that he "was not in possession of the flyer or any of the letters [when they were found]. . . . [Instead] it was the government's key witness, Randall Bland, who had the flyer, who had other items, who had mail." J.A. 71–72.

The district court denied the defendant's motion to exclude the evidence, ruling that the letters were admissible to show "proof of motive, opportunity, intent, preparation, planning, knowledge, identity, or absence of mistake or accident" under Rule 404(b). Specifically, the court noted that the defendant had made the identity of the flyer's author a key issue in the case:

> I can't help but note that counsel just argued that Mr. Bland had this pamphlet in his possession, and it sounds to me like [the defendant] was trying to point the finger at him as the criminal agent in this case. So establishing identity is apparently an issue that's not just hypothetical, but that is an issue in this case.

J.A. 71–72.

In addition to the five challenged documents discussed above, the government introduced several other materials attempting to link Sebolt to the flyer. One such item, also found in Bland's possession, was a series of form letters to book publishers and prison book programs requesting books on child care, child development, artistic nudity, and nomadic and indigenous tribes throughout the world. The letters requested that the books contain photographs and that nudity was preferred. Each of the letters contained Sebolt's name and BOP number.

The government also introduced a National Geographic book that was discovered in a locker in Sebolt's cell. The back cover of the book contained a

---

[4] The letter states, "Phil really I don't know what sense to give the people children nacked [sic] photos. In my way, I don't care for the nacked [sic] children photos also I'm not agree by these hobby [sic]." J.A. 406.

4

hidden compartment, in which were photographs of nude children that matched the photographs found in the flyer.[5]

At trial, Sebolt continued to deny any involvement in creating the flyer. In pointing the finger at Bland, he repeatedly referenced Bland's past history with child pornography and the fact that the flyer was found in Bland's possession. In his closing argument, the defendant stated that "it is Mr. Bland who is the real culprit in this." J.A. 255. Sebolt also specifically denied that the National Geographic book found in his cell belonged to him.

At the conclusion of trial, the district court found Sebolt guilty. The court relied in part on the Rule 404(b) evidence, stating that "the evidence shows that the pamphlet or flyer is very similar in writing to other items which are pretty clearly linked to Mr. Sebolt." J.A. 261. The court also noted that the photographs in the flyer were the same as those in the National Geographic book found in Sebolt's cell, and that the book contained a secret compartment that was just like those in the greeting cards.

At sentencing, the court increased Sebolt's criminal history category from IV to V, finding him to be a "repeat and dangerous sex offender" pursuant to U.S.S.G. § 4B1.5. The court also applied a two-level enhancement for distribution pursuant to U.S.S.G. § 2G2.1(b)(3). Sebolt's total offense level was determined to be 38, resulting in a Sentencing Guideline range of 420 months to life.[6] Noting an intention to sentence the defendant to the high-end of his Guidelines range, the court imposed a sentence of life in prison.

*Id.* at 202–04 (alterations original).

## II. Alleged Ineffective Assistance with Respect to Guilt

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption'

---

[5] Also found in Bland's box, and introduced at trial, was a letter written to Ms. Tekeste that was signed in Sebolt's name and BOP number. The letter offered Ms. Tekeste the opportunity to earn money in exchange for sexually graphic photos of a child named Ezana. The letter also included sexually graphic sketches similar to those included on the flyer. The letter requested that the pictures be sent to "Phil c/o Russell Cain" at the same mailing address found in the flyer.

[6] Sebolt faced a statutory mandatory minimum sentence of 420 months because of his two prior convictions. *See* 18 U.S.C. § 2251(e).

5

that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A.   The 404(b) Evidence

In Claim 1(b)(1), Sebolt complains that counsel failed to raise a proper objection to the five pieces of evidence discussed above that the Government introduced under Fed. R. Evid. 404(b). To be admissible under that rule, "the evidence must be (1) relevant to an issue other than the general character of the defendant; (2) necessary to prove the charged offense; (3) reliable; and (4) its probative value must not be substantially outweighed by any prejudicial effect, as measured by Rule 403." *United States v. Sebolt*, 554 F. App'x 200, 205 (4th Cir. 2014) (citing *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010)). Sebolt complains that the evidence was not reliable because there is no probative evidence that he was the author or intended recipient of the contested exhibits. Sebolt's complaint is frivolous. The Fourth Circuit exhaustively explained the admissibility of evidence under the relevant factors:

> First, the 2008 letters to Ms. Jinadari and from Ms. Tekeste established pre-existing relationships between Sebolt and these individuals. This is important because they were both intended recipients of copies of the flyer found in Bland's possession. It is also clear from the letters that these relationships were centered on secretly exchanging photographs for money. Thus, the letters make it more likely that the flyer, which sought to exchange nude photos of children for money with these same individuals, was created by Sebolt and not Bland, who had no similar connection with Ms. Jinadari and Ms. Tekeste. Additionally, the government's handwriting

expert testified that it was highly probable that the same person who drafted the letter to Ms. Jinadari, which was signed in Sebolt's name and BOP number, also created the flyer.

Next, the March 2007 letter to Candy Brown was relevant to showing that the National Geographic book found in Sebolt's cell belonged to him, a fact he specifically put in dispute at trial. The district court noted that the book contained a secret compartment similar to the one in the greeting cards, the design of which was discussed in detail in the letter to Ms. Brown. Thus, the letter made it more likely that the book belonged to Sebolt, which in turn helped show that the flyer, which contained the same photographs found in the book, was created by him.

Finally, the 2006 book requests provided yet another connection between Sebolt and the flyer. The requests were similar to other request forms found in Bland's box and signed by Sebolt. The requests therefore indicated that at least some of the materials found alongside the flyer belonged to Sebolt. Although this connection was to some extent similar to those demonstrated by the other materials, it supported the Government's contention that Sebolt was the source of the documents found in Bland's box, including the flyers, and that he gave Bland the documents to safely place in the mail following his release from prison.

In all of these ways, the disputed evidence did more than merely establish Sebolt's propensity for soliciting child pornography. To the contrary, they each indicated a specific connection between Sebolt and the flyer that helped show he was its author.

. . . .

For many of the same reasons that the exhibits were relevant, each was also necessary to proving the government's case. *See McBride*, 676 F.3d at 396 (stating that the relevancy and necessity factors, "which embody overlapping concerns, are often considered in tandem"). Evidence is necessary when it is "an essential part of the crimes on trial" or it "furnishes part of the context for the crime." *United States v. Byers*, 649 F.3d 197, 209 (4th Cir. 2011). The primary issue at trial was whether Sebolt created the flyer. Given that the copies of the flyer were found in Bland's possession, it was necessary for the government to establish a connection to Sebolt through other means. It did so by using similarities in the handwriting, the intended recipients, and the content of the flyer and other works attributed to Sebolt. Without this evidence, the government would have been forced to rely largely on the word of Bland, a convicted felon and the person at whom Sebolt was pointing the finger. Given these circumstances, we conclude that the disputed exhibits satisfy the necessity requirement of our Rule 404(b) analysis.

Turning next to the reliability prong, there is no reason to think that the 404(b) evidence was not reliable. The witnesses through which the exhibits were introduced were cross-examined by the defendant, *see Queen*, 132 F.3d at 998, and there was no indication of bias or untruthfulness on their part, *see id*. Additionally, although the defendant insinuated at trial that he had no knowledge of or involvement with any of the disputed exhibits, they all bore sufficient indicia that he was the author or intended recipient of each, as counsel has now acknowledged.

Finally, as with all evidence, proposed Rule 404(b) evidence must not be substantially more prejudicial than probative to the defendant, as determined by

Rule 403. *Byers*, 649 F.3d at 210. We have previously acknowledged that, in the context of a bench trial, there is less concern that the finder of fact will utilize evidence for an improper purpose. *See United States v. Hassanzadeh*, 271 F.3d 574, 578 (4th Cir. 2001) ("[W]e have confidence that at the bench trial, the experienced district judge was able to separate the emotional impact from the probative value of this potentially prejudicial evidence."); *see also Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) (holding that in civil bench trials "evidence should not be excluded under [Rule] 403 on the ground that it is unfairly prejudicial"). Indeed, we are unable to find a single published case in which a court of appeals reversed a district court's admission of extrinsic evidence in a bench trial. For all of the reasons previously stated, as well as our confidence in the district court's ability to sort through any potentially prejudicial impact of the disputed evidence, we decline to be the first.

*Id.* at 205–07 (alterations in original). With respect to the 404(b) evidence, Sebolt fails to demonstrate that counsel performed deficiently or that he was prejudiced by any omission of counsel. Accordingly, Claim 1(b)(1) will be DISMISSED.

### B. Lay Testimony about Handwriting

In a further effort to distance himself from the challenged exhibits, Sebolt faults counsel for failing to object to the lay opinion testimony of Heather McWilliams and Scott J. Bernado with respect to Sebolt's handwriting. Both McWilliams and Bernado were familiar with Sebolt's handwriting because they were responsible for monitoring Sebolt's mail, which required special monitoring. Bernado testified that the handwritten flyer appeared "to be Philip Sebolt's handwriting." (Sept. 13, 2012 Tr. 99.)

McWilliams asserted that Sebolt was the author of the December 2008 Christmas letter to Ms. Jinadari in Sri Lanka, because Sebolt's name and prison registration number were listed on the envelope as the return address. (Sept. 13, 2012 Tr. 40.) On cross-examination, defense counsel attempted to suggest that some other inmate could have simply written Sebolt's name and registration number on the envelope containing the December 2008 Christmas letter. (*See, e.g.*, Sept. 13, 2012 Tr. 48–50.) On redirect, McWilliams testified that she had reviewed over 100

8

letters from Sebolt between April of 2008 and December of 2008. (Sept. 13, 2012 Tr. 56.) She further stated that she knew he wrote the December 2008 letter because she "was familiar with his handwriting." (Sept. 13, 2012 Tr. 56.)

"[L]ay witnesses may make 'opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *United States v. Garth*, 540 F.3d 766, 779 (8th Cir. 2008) (quoting Fed. R. Evid. 701), *abrogated on other grounds by United States v. Villareal-Amarillas*, 562 F.3d 892 (8th Cir. 2009). In this regard, McWilliams and Bernado were not making a scientific, technical, or specialized handwriting analysis. Rather, they simply testified that the contested handwriting appeared to be similar to Sebolt's. This testimony was permissible because it "was rational, helpful, and not based on expert knowledge." *See id.* Accordingly, counsel was not deficient and Sebolt was not prejudiced by counsel's failure to make the challenge urged here. Claim 1(b)(2) will be DISMISSED.

### C. Failure to Hire a Forensic Document Examiner

In Claim 1(a)(1), Sebolt faults counsel for failing to call a forensic document examiner to present evidence that Sebolt was not the author of the many documents that reflected his guilt, including the flyer soliciting the production of child pornography. Sebolt demonstrates neither deficiency nor prejudice. Where a petitioner faults counsel for not calling a witness, the petitioner must provide "concrete evidence of what [the witness] would have testified to in exculpation." *United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004). Sebolt has not done so. Moreover, Sebolt cannot do so because he is the author of the challenged documents. Claim 1(a)(1) will be DISMISSED.

9

### D. Failure to Obtain Personnel Records of Witnesses Who Worked for the BOP

In Claim 1(a)(2), Sebolt faults counsel for failing to obtain the personnel records of the BOP employees who testified for the Government. Sebolt speculates that such records might have provided a wealth of material for impeaching the integrity and credibility of these witnesses. Sebolt, however, fails to state any facts that support the notion that these files contained any significant impeachment material. "[V]ague and conclusory allegations" of this ilk "may be disposed of without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)). Further, given that Sebolt's guilt and culpability turned on the overwhelming physical evidence arrayed against him, rather than the credibility of a particular BOP employee, Sebolt has not shown any possibility of prejudice. Accordingly, Claim 1(a)(2) will be DISMISSED because Sebolt fails to demonstrate deficiency of counsel or prejudice.

### E. Failure to Move for a New Trial

In Claim 1(c), Sebolt complains that counsel should have moved for a new trial based on the evidence described in Claims 1(a) and 1(b). As explained above, Sebolt has not provided any significant facts that support his innocence. Any motion for a new trial would not have succeeded. Therefore, counsel reasonably eschewed moving for a new trial. Because Sebolt demonstrates neither deficiency of counsel nor prejudice, Claim 1(c) will be DISMISSED.

### III. Alleged Ineffective Assistance at Sebolt's Resentencing

### A. Failure to Object to the Letter Sebolt Wrote to Christina Sykora

In Claim 1(d), Sebolt complains that counsel failed to challenge the unproven facts in the PSR regarding a letter Sebolt wrote to another inmate in Illinois.[7] That paragraph states:

---

[7] The facts pertaining to this letter appear in paragraph 14 of the original PSR (ECF No. 32) and in paragraph 15 of the PSR used for Sebolt's resentencing (ECF No. 65).

> In addition to the letters noted above, there was also a letter addressed to Christina Sykora. Apparently, Ms. Sykora had recently been arrested in Illinois on charges related to child pornography or sexual abuse of a child. In the letter the defendant introduces himself and offers his support. He stated that "It is also my hope that thru writing, we can share ideas; thoughts; experiences; stories; photos/pictures; and pass time during this difficult, lonely time." He then detailed his criminal history, including the fact that he was incarcerated at FCI Petersburg. He then expressed that it was nice to meet a woman who shares "similar sexual desires," "similar interests" and has had "similar fun." The defendant then stated, "I've had many experiences and similar fun you've had with your relative. Trust me, as a babysitter, I've touched, licked, sucked and photographed the genitals of many little boys & girls as young as infants to as old as 12, usually 5 and under. I've done it all and tasted some of the best young penis/vagina I can ever taste. I miss it and cannot wait until I can have fun again. But next time in another country that's more accepting." The defendant concluded the letter by encouraging her to write him soon so they "can explore our sexual desires together." The letter was signed by the defendant and included his name, register number and address, as well as an address in the care of his grandfather, [redacted].

(ECF No. 65 ¶ 15.)[8] Although Sebolt faults counsel for failing to object to the reliability of this information, Sebolt fails to direct the Court to any persuasive, reliable information that he was not the author of the above letter. Given these circumstances, counsel did his best to diminish the negative impact of the letter by suggesting Sebolt's comments in the letter about his conduct are "not supported by corroborative evidence or facts" and "may be the result of fantasy or the words of an obsessed braggart." (ECF No. 66, at 3–4.) Such a tactic was reasonable. Because Sebolt fails to demonstrate deficiency of counsel or prejudice, Claim 1(d) will be DISMISSED.

### B. Failure to Object to Enhanced Sentence under 18 U.S.C. § 2251(e)

In Claim 1(e), Sebolt complains that counsel should have objected to Sebolt's enhanced sentenced under 18 U.S.C. § 2251(e). That provision which governs Sebolt's crime of conviction provides, in pertinent part, that:

---

[8] At Sebolt's initial sentencing, counsel objected to attributing to Sebolt a letter Sebolt had written to Tracy Wright, a female inmate incarcerated at F.C.I Waseca. (Jan. 28, 2012 Tr. 12, 16.) In that letter, Sebolt discussed his sexual preference for toddlers and children and how he had molested one of his relatives. (Jan. 28, 2012 Tr. 17.)

11

> Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years, ... but if such person has 2 or more prior convictions under this chapter ... or *under the laws of any State relating to the sexual exploitation of children*, such person shall be fined under this title and imprisoned not less than 35 years nor more than life. ...

18 U.S.C. § 2551(e) (emphasis added). Sebolt's criminal history included 2004 federal convictions for advertising for, transporting, and possessing child pornography and two 2006 Illinois state convictions for predatory criminal sexual assault of a child. (ECF No. 65 ¶¶ 26–28.) Sebolt contends counsel should have objected that his 2006 Illinois convictions for predatory criminal sexual assault of a child fail to constitute a crime "relating to the sexual exploitation of children." (§ 2255 Mot. 21 (quoting 18 U.S.C. § 2551(e).) Sebolt is wrong and counsel reasonably refrained from making the objection Sebolt urges here. *United States v. Mills*, 850 F.3d 693, 697 (4th Cir.), ("'[S]exual exploitation of children' means to take advantage of children for selfish and sexual purposes."), *cert. denied*, 138 S. Ct. 178 (2017); *United States v. Sanchez*, 440 F. App'x 436, 440 (6th Cir. 2011). Accordingly, Claim 1(e) will be DISMISSED because Sebolt fails to demonstrate deficiency of counsel or prejudice.

### C. Failure to Adequately Challenge Sebolt's Life Sentence

In Claim 1(f)(1), Sebolt contends that if counsel had performed adequate research, that research "would have revealed that there are defendants similarly situated to Sebolt with similar (or worse) records who have been found guilty of similar (or worse conduct) that received far less than life imprisonment." (§ 2255 Mot. 23.) Sebolt, however, does not, as he must, accompany this allegation with any concrete "facts that point to a real possibility of constitutional error." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (quoting *Blackledge v. Allison*, 431 U.S.

63, 75 n.7 (1977)).[9] As such, Sebolt fails to demonstrate that counsel was deficient or that he was prejudiced by the failure of counsel to make the arguments he urges here. Claim 1(f)(1) will be DISMISSED because Sebolt fails to demonstrate deficiency of counsel or prejudice.

In Claim 1(f)(2), Sebolt faults counsel for not objecting that a life sentence would violate the Eighth Amendment. Sebolt contends that, as applied to him, his sentence of life imprisonment violates the Eighth Amendment. "[T]he Supreme Court has adopted a two-prong test for assessing an as-applied challenge to the proportionality of a sentence. Under prong one, a court must determine whether a threshold comparison of 'the gravity of the offense and the severity of the sentence' produces an inference of gross disproportionality.'" *United States v. Said*, 798 F.3d 182, 196 (4th Cir. 2015) (quoting *Graham v. Florida*, 560 U.S. 48, 60 (2010)). Only if prong one is satisfied does the court move to an analysis of prong two, where "the court must 'compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.'" *Id.* (quoting *Graham*, 560 U.S. at 60).

With respect to the first prong, "[t]he Supreme Court has on one occasion—in its *Solem*[10] decision of 1983—identified a non-capital sentence as being grossly disproportionate." *Id.* In *Solem*, the defendant

> was sentenced to life without parole for uttering a $100 bad check. The Court observed that the matter involved "one of the most passive felonies a person could commit," in that the offense "involved neither violence nor threat of violence to any person"; Helm's prior offenses "were all relatively minor"; and life

---

[9] Sebolt likens himself to the defendant in *United States v. Price*, 775 F.3d 828, 830, 840 (7th Cir. 2014), who was convicted of producing child pornography and possessing child pornography and received a sentence of 18 years of imprisonment. Unlike Sebolt, the defendant in that case was not incarcerated when he committed his offense, did not have a prior criminal record for sexually exploiting children, and had not demonstrated an unwavering commitment to sexually preying upon children during and after his incarceration.

[10] *Solem v. Helm*, 463 U.S. 277 (1983).

13

imprisonment was "the most severe punishment that the State could have imposed on any criminal for any crime."

*Id.* (quoting *Solem*, 463 U.S. at 296–97). "Significantly, [neither the Supreme Court nor the Fourth Circuit has] identified a grossly disproportionate life sentence or putative life sentence in the wake of *Solem*." *Id.* at 198 (citations omitted).

Here, Sebolt's life sentence for advertising child pornography, after committing multiple prior crimes involving the sexual exploitation of children, does not produce an inference of gross disproportionality. *United States v. Cobler*, 748 F.3d 570, 580 (4th Cir. 2014) (observing that, "[g]iven the shocking and vile conduct underlying [his convictions for producing, transporting, and possessing child pornography]," the defendant "failed to substantiate the required threshold inference of gross disproportionality"). Therefore, counsel reasonably refrained from challenging Sebolt's sentence as violating the Eighth Amendment. Because Sebolt fails to demonstrate deficiency of counsel or prejudice, Claim 1(f)(2) will be DISMISSED.

In a related vein, in Claim 1(f)(3), Sebolt opines that "[t]he acts of soliciting to receive and buy child pornography . . . . are much less[] [serious] . . . than the acts of actual production [of] . . . child pornography." (§ 2255 Mot. 28.) Sebolt contends it was somehow unfair or unconstitutional to punish him under the 18 U.S.C. § 2251(e) scheme and he should be punished under the more lenient sentencing scheme for simply possessing child pornography in 18 U.S.C. § 2252(b). Sebolt cites no persuasive authority for this frivolous argument. Counsel reasonably refrained from pursuing it. Claim 1(f)(3) will be DISMISSED because Sebolt fails to demonstrate deficiency of counsel or prejudice.

### IV. Alleged Ineffective Assistance of Appellate Counsel

In Claim 1(g), Sebolt faults counsel for failing to argue that "the December 2008 letter sent from Roda Tekeste to Sebolt with enclosures was not an act committed by Sebolt and therefore

14

inadmissible under Rule 404(b) . . . ." (§ 2255 Mot. 30.) The fact that Sebolt was not the author of the letter does not preclude its admission. As previously noted, the 2008 letter from Ms. Tekeste established a pre-existing relationship between Sebolt and Ms. Tekeste. This was important because she was an intended recipient of a copy of the flyer found in Bland's possession. It is also clear from the letter that Sebolt's relationship with her was centered on secretly exchanging photographs for money. Thus, the letter made it more likely that the flyer, which sought to exchange nude photos of children for money with Ms. Tekeste, was created by Sebolt and not Bland, who did not have a connection with Ms. Tekeste. Accordingly, appellate counsel reasonably refrained from making the argument Sebolt urges here. Because Sebolt fails to demonstrate deficiency of counsel or prejudice, Claim 1(g) will be DISMISSED.

Next, in Claim 1(h), Sebolt complains that appellate counsel should have raised the claims described in Claims 1(f)(1) through 1(f)(3). These claims are frivolous for the reasons described above. Additionally, Sebolt contends that appellate counsel should have argued that the District Court abused "its discretion by imposing a sentence that focuse[d] extensively on one § 3553(a) sentencing factor at the expense of a reasoned analysis of other pertinent sentencing factors." (§ 2255 Mot. 31 (citation omitted).) The record in this case reflects that the Court gave adequate weight to all of the required factors. (July 9, 2014 Tr. 26–33.) Therefore, such an argument would not have prevailed on appeal. Because Sebolt fails to demonstrate deficiency of counsel or prejudice, Claim 1(h) will be DISMISSED.

## V. Defaulted Claims

The Government correctly asserts that Claims 2 through 4 are barred from review here, absent a showing of cause and prejudice or actual innocence, because Sebolt could have raised, but did not raise, these claims on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 622–

23 (1998). Sebolt fails to demonstrate cause and prejudice to excuse his default of his claims.[11]

Furthermore, Sebolt fails to tender any new, reliable evidence demonstrating his innocence. *Hill v. Johnson*, No. 3:09CV659, 2010 WL 5476755, at *5 (E.D. Va. Dec. 30, 2010) (citing *Weeks v. Bowersox*, 119 F.3d 1342, 1352–53 (8th Cir. 1997); *Feaster v. Beshears*, 56 F. Supp. 2d 600, 610 (D. Md. 1999)). Accordingly, Claims 2 through 4 will be DISMISSED.

## VI. Conclusion

For the foregoing reasons, Sebolt's § 2255 Motion (ECF No. 105) will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.

An appropriate Order will accompany this Memorandum Opinion.

/s/ 
John A. Gibney, Jr.
United States District Judge

Date: 27 January 2020
Richmond, Virginia

---

[11] To the extent that Sebolt asserts that the ineffective assistance of counsel excuses his default of Claims 2 and 3, that assertion lacks merit for the reasons discussed in conjunction with Sebolt's ineffective assistance of counsel claims. Furthermore, counsel was not deficient and Sebolt was not prejudiced by the failure of appellate counsel to raise Claim 3.

16